**BURNETTE et al. v. REALTY TRUST CO. et al.**
**No. 11458.**

Court of Civil Appeals of Texas. Dallas.
April 28, 1934.

Rehearing Denied Sept. 15, 1934.

G. Q. Youngblood, of Dallas, for appellants.

Goggans & Ritchie and Robert Allan Ritchie, all of Dallas, for appellees.

JONES, Chief Justice.

This suit was instituted in a district court of Dallas county by appellants, Mary H. Burnette, a feme sole, and W. L. Burnette and wife, Mrs. Florence C. Burnette, against the Realty Trust Company and L. M. Dabney, intervener, appellees, to cancel a trustee's sale of the property, to Dabney, at the instance of the Realty Trust Company, on the ground that said sale was based upon a usurious contract, to have all payments of principal and interest credited on the principal loan, to cancel all deeds of trust and the lien thereby attempted to be created, on the same ground, and to be permitted in equity to pay the remainder, if any, of the principal indebtedness created by a loan from the Realty Company, first to Burnette and wife, and by renewal to Miss Mary H. Burnette. From a judgment adverse to appellants, an appeal has been perfected. The Realty Trust Company will be referred to as the Realty Company.

The following are the necessary facts:

This suit resulted from two loans made by the Realty Company to the appellees, each of which was secured by a deed of trust lien on the land in question. The first loan was made by the Realty Company to Burnette and wife, on February 19, 1925, in the principal sum of $6,500, evidenced by three notes; two for $500 each, one maturing March 1, 1928, the other March 1, 1929, and one note for $5,500, maturing March 1, 1930. Each of these notes bore interest at the rate of 6 per cent. per annum, and each note had attached to it interest-coupon notes, representing the semiannual payment of interest on each note. The deed of trust executed by Burnette and wife created a first lien on the land to discharge these three notes, both principal and interest. On August 5, 1928, Burnette and wife, by warranty deed, duly conveyed this land to Mary H. Burnette, a feme sole, and, as part of the consideration, assumed payment of the indebtedness outstanding in this first loan.

The other loan was made by the Realty Company to Mary H. Burnette, on March 1, 1930, which, in effect, was a renewal of the outstanding indebtedness of the first loan, which amounted to $5,500. This loan was evidenced by five notes executed to the Realty Company by Mary H. Burnette, and secured by a deed of trust lien executed by her on the same property as a first lien on this land; the original deed of trust lien securing the first loan was superseded by this deed of trust lien, and the original loan discharged. These five notes consisted of two for $375 each, maturing respectively March 1, 1931, and March 1, 1932; two for $400 each, maturing respectively March 1, 1933, and March 1, 1934; and one note for $4,000, maturing March 1, 1935. Each of these notes bore interest at the rate of 6 per cent. per annum, and each had attached to it interest coupon notes, representing the semiannual payment of interest.

While the three notes, evidencing the first loan of $6,500, bore interest at the rate of 6 per cent. per annum, the contract with Burnette and his wife was that the loan should bear interest at the rate of 8 per cent. per annum, and while the five notes, evidencing the second loan of $5,500, dated March 1, 1930, bore interest at the rate of 6 per cent. per annum, the contract with Mary H. Burnette was for 8 per cent. interest. The remaining 2 per cent. of the contract interest on each loan was taken care of in the first loan by the execution by Burnette and wife of ten notes, aggregating $623.60, one of this series of notes maturing thereafter on each day the semiannual interest coupon notes were payable, each note representing the accumulation of interest at the rate of 2 per cent. per annum on the $6,500, or such portion thereof as remained unpaid. This series of notes was secured by a second deed of trust executed by Burnette and wife on the land in question, and creating a second lien to secure the payment of the series of notes. There was no accelerating clause contained in these second lien notes, or in the deed of trust securing same.

The 2 per cent. remaining interest on the second loan, in favor of Mary H. Burnette, was taken care of by the execution by her of a series of ten notes, aggregating $477. One of these notes matured each six months after March 1, 1930, up to March 1, 1935. These ten notes were secured by the due execution by Mary H. Burnette of a second deed of trust on the land in question, creating a second lien for such purpose, and neither of said notes, nor this second deed of trust, contained any accelerating clause. The series of ten notes, representing 2 per cent. interest, in each of the loans, bear no interest until maturity, and then interest at the rate of 10 per cent. per annum.

The three notes representing the principal of the first loan, aggregating the sum of $6,500, contained an accelerating clause, which will be hereafter set out. The deed of trust securing this loan also contained an accelerating clause, the effect of which will be hereafter given. Each of the five notes, evidencing the second loan for $5,500, contained the same accelerating clause as was contained in the principal notes of the first loan, and the deed of trust creating the first lien on the land, to secure the payment of the second loan, contained the identical accelerating clause, contained in the deed of trust executed by Burnette and wife.

No default was made on the first loan, it being taken up at maturity by the extension of the balance of $5,500 in the form of the loan to Mary H. Burnette, on March 1, 1930. However, on March 1, 1932, Mary H. Burnette defaulted in the payment of the second $375 note, representing such portion of the principal in the second loan, in the payment of coupon note No. 4, in the sum of $154.50, representing the semiannual payment of interest, and in the payment of note No. 4 for $51.50, of the series of ten notes, secured by the second deed of trust. On this default, the Realty Company did not exercise its option to declare all of the remaining indebtedness due, but by proper request, and exercising its right of power of sale in the deed of trust, caused the

trustee, after complying with the prerequisites for such a sale, to have the property sold at public outcry, to pay the indebtedness in default, and subject to all unmatured outstanding indebtedness. As a result of this sale, the trustee duly executed a deed of conveyance of the property to L. M. Dabney, the highest and best bidder; his bid being $150 cash. Dabney's title to the land, by this conveyance of the trustee, is incumbered with valid liens in excess of $5,000, which must be discharged before he can secure an unincumbered title to the land. In other words, at this sale, only whatever equity Mary H. Burnette had in the land passed to the purchaser.

The trustee's sale is attacked on the ground that the consideration was so grossly inadequate as to render the sale void, and the jury, on the only special issue on which it returned a verdict, found that the sum of $150 was not a sufficient and adequate consideration for the transfer of the title from Mary H. Burnette to L. M. Dabney, Jr. Mere lack of consideration does not render such a sale void —if the sale was legally and fairly made— and we think this finding falls far short of being sufficient to impeach the sale of the trustee, and that the court did not err in disregarding such finding. This assignment is overruled. Bordages v. Higgins et ux., 1 Tex. Civ. App. 43, 19 S. W. 446, 20 S. W. 184, 726; Spiller v. Bell (Tex. Civ. App.) 55 S.W.(2d) 634, and authorities cited in these cases.

The primary contention of appellants, however, in their attack on the sale and trustee's deed, and the one that is decisive of this case, is that the land was sold to pay a usurious debt. If the contract entered into, as shown by the notes and respective deeds of trust, authorized a charge for usurious interest, under any contingency, then the trustee's sale was void, because for a debt tainted with usury, and, if such be the fact in this case, then appellants are entitled to have all interest credited as payments on the principal. This rule is clearly announced in the case of Schropshire v. Commerce Farm Credit Co., 120 Tex. 400, 30 S.W.(2d) 282, 39 S.W.(2d) 11, 84 A. L. R. 1269; Bankers' Life Co. v. Miller et al. (Tex. Civ. App.) 68 S.W.(2d) 574. Does the instant case come within this rule?

The evidence as to this issue is undisputed, consisting of the various instruments, above described, executed by the parties. These instruments, evidencing the two loan contracts —one of date February 19, 1925, the other of date March 1, 1930—show on their face a contract to pay interest at the aggregate rate of 8 per cent. per annum; the former for the loan of $6,500, and the latter for the loan of $5,500. If the loan contract made with W. L. Burnette and wife, on February 19, 1925, had been carried out according to its terms, and if the loan contract made with Mary H. Burnette on March 1, 1930, had been carried out according to its terms, 8 per cent. per annum would have been all the interest that could have been exacted for the use of the money in either case. However, the notes evidencing each of these loans contained a clause creating a contingency, on the happening of which the lender was given an option, the exercise of which appellants claim authorized the exaction of usurious interest. Likewise, the deeds of trust each contained a similar contingency clause, which authorized the exercise of a similar option. The disposition of this appeal, therefore, rests upon the construction to be given these contingency, or accelerating, clauses.

In construing these clauses, regard must be had for the established rule that, if a contract is of doubtful meaning and subject to two constructions—one making it a legal contract, the other making it an illegal one—that construction which would make it legal must be adopted, rather than the one that would make it illegal. Bankers' Life Co. v. Miller et al., supra; Walker v. Temple Trust Co. (Tex. Civ. App.) 60 S.W.(2d) 826; Texas Emp. Ins. Ass'n v. Tabor (Tex. Com. App.) 283 S. W. 779; City of Memphis v. Browder (Tex. Com. App.) 12 S.W.(2d) 160; 6 R. C. L. 839, § 229.

Each note, representing a part of the principal in the two loans, provides that: "If default be made in the payment of either principal or interest, when the same becomes due and payable, then all of said principal and interest shall, at the option of the legal holder or holders thereof, become at once due and payable, without notice." If this language be susceptible only to the construction that, in the case of the named default, the lender could declare the unpaid balance of the principal of the loan due, together with both the matured and the unmatured interest coupon notes, then the clause is not of doubtful meaning and the contract is, as a matter of law, usurious. If, however, this clause, though susceptible to the above construction, is also susceptible to the construction that the unpaid balance of the principal and only the matured interest thereon could be exacted, then the clause is of doubtful meaning and, under the above authorities, the courts must adopt that construction which makes the contract legal. If the word "interest" had been modified by the words "ma-

tured and unmatured," or words of similar import, then its meaning in this clause would have been clear, and subject only to the construction that all coupon interest notes could be declared due and payable; or, if the word "interest" had been modified by either the word "matured" or "past-due," or words of similar import, then the meaning would have been clear that none of the unmatured interest coupon notes could be declared due and payable; but the term "interest" in the clause contains neither of these modifying words, and its meaning becomes a matter of construction.

██ In construing any clause in a contract, due observance must be given to the entire contract, whether it be contained in one instrument or in two or more; for only in this way can the controlling fact of the intention of the parties be ascertained. In the deed of trust securing the notes, evidencing the indebtedness created under the loan, it is declared, in effect, that in case of default in payment of the notes or any interest thereon, or in the performance of the covenants or agreements therein contained, then, at the option of the legal holder of the note, "the whole indebtedness secured hereby shall at once become due, without notice, and may be collected by suit or proceedings hereunder." Manifestly, the parties intended the same construction to be placed on this accelerating clause in the deed of trust as they intended to be placed on the accelerating clause in the notes. The term "whole indebtedness," used in the accelerating clause in a deed of trust, has been construed by the courts of this state to be the unpaid balance of the principal, and the matured interest up to the time of payment, and not to include any unearned interest at such time. Ætna Life Ins. Co. v. Foster (Tex. Civ. App.) 66 S. W.(2d) 428; Spiller v. Bell (Tex. Civ. App.) 55 S.W.(2d) 634; Dugan v. Lewis, 79 Tex. 246, 14 S. W. 1024, 12 L. R. A. 93, 23 Am. St. Rep. 332; Bankers' Life Co. v. Miller et al. (Tex. Civ. App.) 68 S.W.(2d) 574. These decisions, we think, announce the correct rule of law, and we adopt the same construction of the accelerating clause in the deeds of trust in this case as was adopted in the reported cases. Believing that the parties intended to express the same thought in the accelerating clause in the notes as was expressed in the respective deeds of trust, we construe the word "interest" in such clause to mean "matured interest" only, and thereby construe both loan contracts to be legal.

Then again, the intention of the parties, in no instance, to authorize the collection of interest in excess of 10 per cent. per annum is clearly made manifest in the clause of each deed of trust providing that, if the note and lien be held by a nonresident and is taxed under the law of this state, as real estate, then such taxes shall be charged to the borrower and paid by him, "provided, that if the payment of the rate of interest provided for in said bond (note) and the taxes and assessments referred to in this clause shall be construed by the court finally having jurisdiction thereof, as requiring payment on the loan of money, represented by said bond, of interest in excess of ten per cent per annum, the holder of said bond (shall) pay such excess." To our minds, this clearly negatives any intention on the part of the parties to the two loans under inquiry to contract for usurious interest.

We therefore conclude that the two loan contracts under consideration are susceptible to the reasonable construction that neither the accelerating clause in the notes, nor the accelerating clause in the deeds of trust, authorize the collection of usurious interest and that the judgment of the lower court, so construing such loan contracts, should be affirmed.

Affirmed.

### On Motion for Rehearing.

On motion for rehearing, appellants attack the findings of this court, to the effect that the $6,500 loan, evidenced by two $500 notes and one $5,500 note, each bearing interest at the rate of 6 per cent. per annum from date, and assert that such notes did not bear interest until maturity and then bore interest at the rate of 10 per cent. per annum. The $5,500 note contains this clause, "with interest thereon at the rate of six per cent (6%) per annum, payable semi-annually, according to the terms of the interest coupons of even date herewith and attached hereto. This coupon and any interest thereon shall bear interest at the rate of ten per cent per annum after maturity until paid." The ten interest coupon notes attached to the principal note, representing a semiannual payment of interest at the rate of 6 per cent. per annum, did not bear interest until maturity, and then each matured coupon note bore interest at the rate of 10 per cent. per annum. This same interest clause is contained in all the other notes executed by appellants, which represent a part of the principal of the loan. The contract for the loan called for 8 per cent. interest; the remaining 2 per cent. interest was represented by one installment note, secured by a second deed

of trust lien, and did not bear interest until after maturity, and then bore interest at 10 per cent. per annum.

 Seemingly, appellants' theory is that, in executing the notes representing the principal indebtedness, in executing the coupon notes representing the semiannual payment of interest, and in executing the second lien note, representing the 2 per cent. interest, all must be considered as the principal indebtedness, and that the sum total of the notes, representing the principal, the coupon interest notes, and the installment interest note, constitutes the amount of money appellants obligated themselves unconditionally to pay, and that the difference of this sum total and the $6,500 received by appellants represents the payment for the use of the money they received. We did not so construe appellants' contract and we think the opinion is plain on this question.

We have carefully considered all of the other grounds urged by appellants for a rehearing, with the result that we adhere to our conclusion in the original opinion, and overrule the motion for a rehearing.

Overruled.