### WELLFARE et al. v. REALTY TRUST CO. et al.

### No. 1478.

Court of Civil Appeals of Texas. Eastland.
July 12, 1935.

Rehearing Denied Sept. 20, 1935.

Lyle Saxon, of Dallas, for appellants.

Goggans & Ritchie, of Dallas, for appellees.

LESLIE, Chief Justice.

This is a usury case, and the charge is based upon acceleration clauses in various notes and deeds of trust, and there is no contention that in the transaction the interest actually provided for in the absence of acceleration would constitute usury. In fact, no contention is made that actual usury was ever collected under the loan contracts.

The plaintiffs, Mrs. E. K. Wellfare and others, instituted this suit against the Realty Trust Company, a corporation, and others, alleging that they had theretofore entered into a usurious contract with W. A. Waldrop, and that later the same loan was taken up and extended by the Realty Trust Company by contract of like nature. They further allege that usurious interest payments had been made on these loans, and they sought to have application of such interest payments made to the unpaid balance of the principal, etc. The defendants, some of them assignees of the notes, answered by general denial, plea of estoppel, etc. The trial was before the court without a jury, and resulted in a judgment in favor of the defendants and against the charges of usury.

As stated, two loans are involved. The first will be herein designated as the Waldrop loan, and the second as the Realty Trust Company loan. The first loan contract was executed by Mrs. E. K. Wellfare and others to W. A. Waldrop April 10,

1925. It is evidenced by three principal notes, one for $130, one for $150, and the third for $2,900, each dated April 10, 1925, maturing three, four, and five years, respectively, from date, at the rate of 6½ per cent. per annum, payable semiannually, etc. These principal notes are referred to in the deed of trust as the bond. As part of the above transaction, an additional interest note, at the rate of 1½ per cent. per annum on the principal notes, and amounting to $232.75, was also executed by appellants to Waldrop. This note was payable as follows:

| | | | |
|---|---|---|---|
| $23.85 | on October 10, 1925 | $23.85 | on April 10, 1926 |
| $23.85 | on October 10, 1926 | $23.85 | on April 10, 1927 |
| $23.85 | on October 10, 1927 | $23.85 | on April 10, 1928 |
| $22.87½ | on October 10, 1928 | $22.87½ | on April 10, 1929 |
| $21.75 | on October 10, 1929 | $21.75 | on April 10, 1930 |

—with interest at the rate of 10 per cent. per annum from date of maturity, etc.

A first deed of trust executed by the Wellfares against lot 10, in block 6, Vickery place, an addition to the city of Dallas, Dallas county, Texas, secured the three principal notes. A second deed of trust in like form, covering the same property, secured the 1½ per cent. interest or commission note of $232.35.

It is the contention of the appellants that the above notes and deeds of trust constitute a usurious transaction because it was, under the contract, within the power of Waldrop, or the holder and owner of the notes, to declare all the indebtedness immediately due, both principal and interest to become due, had there been a default at maturity in the payment of either; that as mortgagee and payee in said notes he could have collected on said notes for a period of one year the full amount of principal in the sum of $3,180, together with an additional sum of $1,130 as interest thereon, which is approximately 35 per cent. on the principal indebtedness. More broadly stated, the contention is that, if appellants had defaulted in the payment of either principal or interest at any time when due during the life of the contract, it was in the power of the mortgagee, Waldrop, to declare the principal note and all interest provided for, therein including the full amount of $232.-35 interest notes due and payable.

The three principal notes contain an acceleration clause as follows:

"Failure to pay any portion of principal or interest when due, or failure to comply with or perform any of the provisions, conditions or covenants contained in the hereinafter mentioned instruments of writing, shall, at the option of the holder hereof mature the entire indebtedness secured by the hereinafter mentioned lien."

The first and second deeds of trust executed contemporaneously with said notes, and therefore being a part of the loan transaction, contained the following provision:

"Now, should the parties of the first part make prompt payment of said indebtedness, both principal and interest, as the same shall become due and payable, then this conveyance shall become null and void. * * * But should the parties of the first part make default in the punctual payment of said indebtedness, or any part thereof, principal or interest, as the same shall become due and payable * * * or fail to keep said improvements in good condition and repair * * * or fail to pay, as the same shall become due and payable all taxes that shall be chargeable to or assessed against this mortgage and the note or notes hereby secured, which tax payments on this mortgage and the note or notes hereby secured, together with interest payments, *are not to exceed 10 per cent. per annum on the principal amount of the indebtedness hereby secured, then, in any such case, the whole amount of such indebtedness hereby secured, remaining unpaid shall, at the option of the party of the third part, or other holder thereof, immediately mature and become payable* and it shall thereupon, or at any time thereafter, the same or any part thereof remaining unpaid, be the duty of said party of the second part herein, and of his successor or substitute as hereinafter provided, on request of said party of the third part, or other holder of the indebtedness hereby secured, or any part thereof * * * to enforce this trust; * * * and out of the money arising from such sale the trustee acting shall pay, first, all the expenses of advertising, sale and conveyances, including a commission of five per cent. to himself, and then, to said party of the third part, or other holder thereof, the full amount of principal, interest and attorney's fees due and unpaid on said indebtedness as hereinbefore set forth, rendering the balance of the purchase money, if any, to said parties of the first part, their heirs or assigns. * * *

"It is further expressly understood and agreed that the note herein and hereby secured is given to secure part of the agreed interest to accrue on three notes of even

date herewith in the aggregate sum of $3,-180, executed by Mrs. E. K. Wellfare et vir, payable to the order of W. A. Waldrop, and fully described in a deed of trust of even date herewith to William T. Sargeant, Trustee."

Under the terms of the foregoing instruments, evidencing the loan contract, is the transaction usurious in view of the maturity acceleration clauses set forth? After a careful analysis of the instruments evidencing this loan, and especially the provisions set out, we are of the opinion that a proper construction of the language of the contract does not create a contingency therein empowering Waldrop, or the holder of said notes, to exact usury, or a higher rate of interest than 10 per cent. per annum on the loan. The provision carrying the acceleration maturity option in said instruments and the basis for its operation have, either in form or substance, often been before the appellate courts of this state. The legal effect and construction of such have become well established, and further discussion of same is deemed unnecessary. As we interpret the decisions, such provision in a note, or loan contract, properly construed, does not mean that the holder of a note may declare not only the principal, but the unearned coupons and interest notes as well, due and payable, in the event of default, prior to final maturity, thus enabling him to exact, for the time, interest greater than 10 per cent. per annum. Unearned interest would not come within the proper meaning of such stipulated acceleration clauses. Lincoln Nat. Life Ins. Co. v. Anderson (Tex. Com. App.) 80 S. W.(2d) 294; Id. (Tex. Com. App.) 81 S. W.(2d) 1112; Dugan v. Lewis, 79 Tex. 246, 14 S. W. 1024, 12 L. R. A. 93, 23 Am. St. Rep. 332; Walker v. Temple Trust Co. (Tex. Com. App.) 80 S.W.(2d) 935; Reynolds Mort. Co. v. Thomas (Tex. Com. App.) 81 S.W.(2d) 52; Braniff Inv. Co. v. Robertson (Tex. Com. App.) 81 S.W.(2d) 45; Marble Sav. Bank v. Davis (Tex. Com. App.) 80 S.W.(2d) 298; Odell v. Commerce Farm Credit Co. (Tex. Com. App.) 80 S.W.(2d) 295; Burnette v. Realty Trust Co. (Tex. Civ. App.) 74 S.W.(2d) 536 (writ ref.); Dunlap v. Voter (Tex. Civ. App.) 72 S.W.(2d) 1109 (writ ref.); Bankers' Life Co. v. Miller (Tex. Civ. App.) 68 S.W.(2d) 574 (writ ref.); Spiller v. Bell (Tex. Civ. App.) 55 S.W.(2d) 634; Ætna Life Ins. Co. v. Foster (Tex. Civ. App.) 66 S.W.(2d) 428; American Trust Co. v. Orson (Tex. Civ. App.) 65 S.W.(2d) 779; N. W. Nat.

Life Ins. Co. v. Whittington (Tex. Civ. App.) 81 S.W.(2d) 173; Clement v. Scott (Tex. Civ. App.) 60 S.W.(2d) 258; Travelers Ins. Co. v. Greer (Tex. Civ. App.) 83 S.W.(2d) 1020; Moore v. Cameron, 93 N. C. 51. Upon the authority above, the appellants' proposition under consideration is overruled.

The expressions "whole of the indebtedness" and "the entire indebtedness," as used in the principal notes (bond), deeds of trust, etc., are, under the circumstances of this case, taken in connection with the acceleration clause, fairly susceptible of the interpretation that it was the intention of the parties to give the owner or holder of the notes the right to recall the loan *with interest to the date of maturity only.* If such meaning can be attributed to the terms of the contract, such an interpretation must be followed. It is a rule of law well recognized in this state that in questions of usury the matter of intention of the parties is controlling. If there be an intention to charge usury, no matter how the transaction may be veiled or disguised, the courts will look through the form to the substance of the transaction and condemn the contract as usurious. Equally well settled is the rule of construction that, if the transaction is such as to render the intention of the parties doubtful, the courts will adopt the construction which attributes to them a legal, rather than an unlawful, intention. Galveston & H. Inv. Co. v. Grymes, 94 Tex. 609, 63 S. W. 860, 64 S. W. 778; Bankers' Life Co. v. Miller, supra.

The rule of construction in such cases is well stated in 66 C. J. § 61, p. 172: "If two reasonable constructions are possible, by one of which the contract will be legal and valid, while by the other it will be usurious and unlawful, the courts will always adopt the former. In short, the general rule of interpretation and construction of such contracts may be said to be that the contract is not usurious when it may be explained upon any other hypothesis."

This rule was applied by our Supreme Court in an able opinion by Commissioner German in Walker v. Temple Trust Co., 80 S.W.(2d) 935, 937.

A portion of the opinion in the Walker Case, pertinent in the construction of the contract before us, and relevant at this point on that and another phase of this case, is as follows:

"As related to the foregoing principle of construction, we may say that as unearned interest is no part of an indebtedness at the time of prematurity under an option by the lender, it is therefore uncollectible because of lack of consideration, and the presumption is that it was not to be collectible in the event of acceleration of undue interest installments; therefore, the rule should be, as clearly recognized in motion for rehearing in the Shropshire Case (Shropshire v. Commerce Farm Credit Co., 120 Tex. 400, 30 S.W.(2d) 282, 39 S.W.(2d) 11, 84 A. L. R. 1269), that unless the contract by its express and positive terms evidences an intention which requires a construction that unearned interest was to be collected in all events, the court will give it the construction that the parties intended that the unearned interest should not be collected."

The loan contracts here challenged fall far short of containing the "express and positive terms" evidencing an intention to collect unearned interest "in all events." To the contrary, they are susceptible to the construction that the parties contemplated a purpose in harmony with obedience to law.

Were we in doubt about the proper construction of the contract, we would therefore necessarily under the facts of this case and the authorities cited reach the same conclusion in the disposition of this appeal.

The loan contract carries other and convincing evidence that the respective parties to the transaction neither intended to collect nor pay usurious or unearned interest. This conclusion is based on a consideration of the contract as a whole, which we are authorized to do under the authorities. Reynolds Mort. Co. v. Thomas, supra. Attention is therefore directed to a portion of the acceleration clauses contained in the second deed of trust, stipulating for the right in certain events to mature the obligation. That clause provides that on contingencies "the whole amount of said indebtedness hereby secured remaining unpaid, shall at the option of the party of the third part * * * immediately mature and become payable, * * *" and the provision as to the distribution of the proceeds of a sale under the deed of trust, after providing for payment of costs, fees, and other items, provides that payment of the balance be made "to said party of the third part, or holder thereof, the full amount of principal, interest * * * due and unpaid." These excerpts manifest an intention to exclude the right of the holder of the notes to collect unearned interest (Marble Sav. Bank v. Davis, supra), and we think such purpose is emphasized in a further provision of the deed of trust above set out stipulating that "* * * tax payments on this mortgage and the note or notes hereby secured *together with interest payments are not to exceed 10 per cent per annum* on the principal amount of the indebtedness hereby secured. * * *" (Italics ours.) Burnette v. Realty Trust Co. (Tex. Civ. App.) 74 S. W.(2d) 536 (writ ref.).

So much for the Waldrop loan. We pass to a consideration of the Realty Trust Company loan, by which that company, upon the application of appellants, Mrs. E. K. Wellfare and others, took up the Waldrop loan and extended, in part, the original obligation. This loan was made June 5, 1929. It was evidenced by four principal notes (designated the bond) as follows: Note No. 1 for $250, due July 1, 1931; note No. 2, for $250, due July 1, 1932; note No. 3 for $250, due July 1, 1933; and note No. 4 in the sum of $2,500, due July 1, 1934. These notes bore interest at the rate of 6 per cent. per annum, payable semiannually, and carried acceleration maturity clauses, presently to be considered. The interest on these notes was evidenced by 28 coupons of even date with said notes and attached thereto. These interest coupons carried no acceleration clause, but bore interest at the rate of 10 per cent. per annum from maturity. As part of the above transaction, the appellants executed a series of ten notes, aggregating $149.75, which represented a part of the interest at the rate of 1 per cent. per annum on the $3,250 loan. These notes were payable as follows:

| | |
|---|---|
| $18.50 on Jan. 1, 1930 | $16.25 on July 1, 1930 |
| $16.25 on Jan. 1, 1931 | $16.25 on July 1, 1931 |
| $15.00 on Jan. 1, 1932 | $15.00 on July 1, 1932 |
| $13.75 on Jan. 1, 1933 | $13.75 on July 1, 1933 |
| $12.50 on Jan. 1, 1934 | $12.50 on July 1, 1934 |

These interest notes bore interest from maturity at the rate of 10 per cent. per annum, and did not contain any acceleration clause.

With respect to this loan, it is the appellants' contention that, in view of the rights of acceleration stipulated for therein, the holder and owner of the notes and lien could, upon the exercise of the option granted, under certain contingencies, mature the principal of said notes, together with an additional sum of $1,125, as interest, the rate thereof being in excess of 34

per cent. per annum on the principal indebtedness, etc.; that such would be the exaction of usurious interest for the use, etc., of the money during a term or year in which appellants might so default, etc.

The four principal notes above set out (known as the bond) contained the following acceleration clause:

(1) "If default be made in the payment of either principal or interest when same becomes due and payable, then all of said principal and interest shall at the option of the legal holder or holders hereof, become at once due and payable without notice."

(2) The first deed of trust securing the four principal notes and attached coupons contains this provision:

(a) "Now, therefore, if default shall be made * * * the trustee, or his successor, may sell said property * * * and shall receive the proceeds of said sale, and out of the same shall pay: First, all charges * * * including a fee * * * to trustee; second, the debt and all sums of money due, or to become due hereunder with interest as agreed * * *"

(b) "It is specially agreed, that if any tax * * * shall be imposed within the State of Texas upon said bond, or upon the interest of said trustee * * * or of any holder of said bond in said premises, or upon the lien of this instrument or said lien or interest shall be declared to be real estate, and shall * * * be taxed or assessed, * * * then the grantor, heirs, legal representatives * * * shall at once discharge said tax * * * provided that if the payment of *the rate of interest provided for in said bond and the taxes and assessments referred to in this clause shall be construed by the court finally having jurisdiction thereof as requiring payment of said loan of money represented by said bond, of interest in excess of 10 per cent per annum, the holder of said bond shall pay such excess.*" (Italics ours.)

(c) "And it is further specially agreed that if default be made in the payment of said bond or any one of them, or any interest thereon, or in the performance of any of the covenants or agreements herein contained * * * then, at the option of the legal holder of said bond the whole indebtedness secured hereby shall at once become due without notice and may be collected by suit or proceedings hereunder."

(3) The second deed of trust securing the additional interest notes at the rate of 1 per cent. per annum contained the following accelerating option:

"* * * But if default shall be made in the payment of any part of said indebtedness, or of any of said notes, or in the performance of any covenant * * * herein, or of said first deed of trust, then in any such event the trustee shall at the request of the holder of any past due and unpaid note, * * * secured hereby, sell the property hereby conveyed subject to the lien of said first deed of trust and subject also to the lien of this instrument for unmatured notes * * * hereby secured, to the highest bidder for cash, as provided in said first deed of trust, or, if the amount of interest paid and accrued on said first deed of trust bond plus the amount of said note shall not aggregate more than 10 per cent. per annum on said bond for the time it shall have run, at the option of the legal owner and holder of said note the whole amount thereof shall at once become due and payable, and the trustee may sell said premises as herein set forth *. * * and deliver to the purchaser of said lands * * * warranty deed * * * therefor subject, however, to the lien of said first deed of trust, and to the lien of this instrument for unmatured notes * * * of the indebtedness hereby secured and shall receive the proceeds of such sale which he shall pay and disburse as follows, to-wit: (1) * * * costs and expenses of executing this trust * * * (2) he shall pay such portion of the debt and other sums hereby secured as shall have become due and payable at the time of instituting such proceeding, * * *" etc.

From the foregoing statement of the nature and contents of the different notes and deeds of trust involved in the Realty Trust Company loan, it is apparent that that transaction does not materially differ in form or legal effect from the instruments evidencing the Waldrop loan considered in the first part of this opinion. Evidently the parties to the Realty loan intended that the same construction should be placed upon the acceleration clauses in the deeds of trust as they intended should be placed on like provisions in the notes. So interpreting the contract, the same rules of law and the authorities relied on in the first part of this opinion are applicable and controlling here. Certainly an application to the terms of the loan contract (either the Waldrop or the Realty Trust Company loan) of the rules of construction for the ascertainment of the intention of the par-

ties leads at once to the conclusion that the contract is susceptible of a meaning in harmony with a lawful purpose and intent upon the part of the makers. Such interpretation excludes the right to collect unearned interest. Hence we are of the opinion that the instruments evidencing the Realty Trust Company loan and the provisions therein specially pointed out do not create a usurious contract, and the appellants' assignments attacking the judgment of the trial court on this point are overruled.

For another and all-sufficient reason, the judgment of the trial court should be affirmed. A loan contract in terms and substance corresponding to that here made by the appellants with the Realty Trust Company was taken for judicial construction before the Dallas Court of Civil Appeals in the case of Burnette v. Realty Trust Co., 74 S.W.(2d) 536, and there challenged under contentions that it stipulated for usurious interest. That court held the loan contract free from usury, and the Supreme Court refused a writ of error. We follow that authority. It was recently cited with approval by the Supreme Court in an opinion by Judge Smedley in Odell v. Commerce Farm Credit Co. (Tex. Com. App.) 80 S.W.(2d) 295.

Further, the loan contract in the instant case also contains the same provision which in the Burnette Case was held to evidence the intention of the parties to so contract as not to authorize the collection of interest in excess of 10 per cent. per annum. That like provision is set out in paragraph (b) above, and will not here be repeated. See Lincoln Nat. Life Ins. Co. v. Anderson, supra.

The appellants rely upon the opinion in the Shropshire Case and others based thereon for reversal of the trial court's judgment. After a careful consideration of that opinion, we conclude nothing is to be found therein that would lead to a reversal of the judgment in this case.

The contract in the Shropshire Case would seem to be usurious upon the ground that the creditor, under the terms of the loan, collected 12 per cent. interest per annum for the first two years of the loan, and was insisting upon collecting the same rate for the three following years. In other words, the contract provided that in case of certain defaults Shropshire was obligated upon the option of the lender to repay the principal with interest in excess of 10 per cent. per annum and the unpaid commission notes as well.

There can be no question about the correct result having been reached in that case. In the disposition of that appeal, certain fundamental principles common to usury cases were discussed which have application to the instant case and clearly distinguish it from the authorities relied upon by the appellant. For instance, in the Shropshire opinion, 120 Tex. 415, 39 S.W. (2d) 11, 13 [2 and 3], when the opinion in Dugan v. Lewis, supra, was being stressed before the Supreme Court on the issues presented in the motion for rehearing, it is stated that Judge Phillips used, in part, this language in referring to the loan contract in the Dugan Case: "Had the stipulation made it clear that upon an acceleration of the maturity, the whole interest was to be collectible without reference to whether it had been earned, a different question would have been before the court."

Our able Supreme Court responded to this point as follows: "In our opinion, this latter question is the one we have determined in this case; for we have a clear stipulation that, upon acceleration of the maturity, *all of the interest* secured by the second lien deed of trust, *despite the fact that much of it is unearned, shall be due and payable.*" (Italics ours.)

Greater emphasis is given to this distinguishing point in the immediately preceding portion of that opinion which is as follows: "If the contract between these parties contained no language other than that, if default was made in the payment of any installment of interest, the principal of the note, 'with interest,' should be collectible at the creditor's option, then such language would be fairly susceptible of the meaning that unearned interest was to be abated. So in Dugan v. Lewis, 79 Tex. [246], 249-254, 14 S. W. 1024, 12 L. R. A. 93, 23 Am. St. Rep. 332, the language of the deed of trust, coupled with the explicit words of the note, made the contract susceptible of the interpretation that unearned interest was not collectible. *But here the parties have used clear and positive language to negative the abatement of any portion of the unearned interest secured by the second lien deed of trust.* The second lien deed of trust secured five interest notes for $252 each. * * * The language of this deed of trust, which we are asked to adjudge fairly susceptible of authorizing abatement of some of the second lien notes representing unearned interest, stipulates: 'If the notes secured hereby and each of them are not paid promptly

when due * * * *then all of said notes hereby secured shall* become due and payable at the election of the holder. *· * *'* " (Italics ours.)

Following this, the eminent judge writing that opinion used this language: "The English language could declare no plainer that what the holder of the notes was to receive, at his option, if any installment interest note secured by the second lien deed of trust was not paid at maturity, was at least: First, *all* of the *unpaid notes* secured by the second lien deed of trust, and not merely a portion thereof less than all; and, second, the unpaid portion of the coupons for at least the earned interest at 6 per cent. per annum." (Italics ours.)

Further analyzing the contract in the Shropshire Case, the court said: "Simply stated, the contract we have declared usurious is one which certainly undertakes to grant the creditor an option, contingent alone on the debtor's default, to collect interest at the rate of 12 per cent. per annum for the first and second years of a loan, and at the rate of 24 per cent. per annum for the third year, which was the final year, at the creditor's election.· * * * Our conclusion is that the words of this contract are so clear that the parties must have understood them as meaning that, upon the debtor's default to pay a second lien installment note, the debtor was to become liable, at the creditor's option, for the payment of the principal of this loan, with compensation for detention thereof at a rate far in excess of 10 per cent. per annum. *Abatement of unearned interest embodied in the second lien notes is not only not sanctioned, but is · forbidden by the terms of the contract."* (Italics ours.)

It is too clear for argument that *all* of the unearned interest notes were made collectible by the terms of the contract there under consideration upon the exercise of the rights of acceleration. A fair consideration of the opinion in the Shropshire Case inevitably leads to the conclusion that it carries within itself a most explicit statement of the facts and legal principles which distinguish it, and later opinions based thereon, from the instant case and numerous opinions upon the question of usury recently released by our Supreme Court and relied upon herein. The above language of our Supreme Court and its analysis of the Shropshire loan contract may well and fairly be considered as making that opinion an authority, in the respects

pointed out, for the disposition we make of this appeal.

The cases of Deming Inv. Co. v. Giddens, 120 Tex. 9, 30 S.W.(2d) 287, and Bothwell v. F. & M. State Bank & Trust Co., 120 Tex. 1, 30 S.W.(2d) 289, 76 A. L. R. 1480, deal with contracts of precisely the same nature as that involved in the Shropshire Case. What was said by the Supreme Court of the Shropshire Case may also be said of the contracts in these cases, viz., abatement of unearned interest was not only not sanctioned, but was forbidden by the terms of the contract.

Commerce Trust Co. v. Best (Tex. Com. App.) 80 S.W.(2d) 942, 943, 944, followed the Shropshire Case and condemned the contract under consideration as usurious, but in doing so pointed out that a provision of the loan contract evidenced by the second deed of trust providing for the exercise of the right of acceleration of the notes stipulated that, upon default in the payment of any one of them, *"then all of said notes * * * shall become due and payable at the election of the holder,"* etc. (Italics ours.)

Naturally, such a provision permitted the reduction of the original term of the loan and the collection of interest in excess of the lawful rate. The conclusions in the Best Case are logical, but not controlling here.

The opinion in Manning v. Christian (Tex. Com. App.) 81 S.W.(2d) 54, 55, prepared by the same able commissioner who wrote the opinion in Lincoln Nat. Life Ins. Co. v. Anderson, disposed of a case in which a contract was condemned as usurious, specifically stating that: "The precise and positive wording of the notes themselves that the holder might mature *all of said notes,* discloses an intention to mature them and make them payable in full, *even though they represented only unearned interest."* (Italics ours.) Certainly, in such a case the Shropshire Case would be controlling.

In the Brashear Case (Dallas Trust & Sav. Bank v. Brashear) (Tex. Civ. App.) 39 S.W.(2d) 148; Id. (Tex. Com. App.) 65 S.W.(2d) 288, the loan contract was held usurious. Apparently, the holding was based upon the terms of the loan contract which "provided for acceleration of *maturity for all the notes in case of default in payment of any one of them."* (Italics ours.) 39 S.W.(2d) 148, 150. Further, interest in excess of·10 per

cent. per annum was in fact collected for the first year on that loan.

In Leach v. Reserve Realty Co. (Tex. Civ. App.) 70 S.W.(2d) 273, the loan contract provided that in case of default "*all* of the monthly payments * * * shall become * * * due." It specifically authorized the collection of unearned interest.

Dodson v. Peck (Tex. Civ. App.) 75 S. W.(2d) 461, and Temple Trust Co. v. Stobaugh (Tex. Civ. App.) 59 S.W.(2d) 916, 917, were cases in which a bonus was exacted and incorporated in the face of the note as principal advanced.

We shall not lengthen this opinion by a discussion of the numerous usury cases, many of recent date. After a careful study of them, we reach the conclusion that as between the latter and prior decisions there is no discord worthy of note, and that the fundamental principles and rules of law applicable to usury cases have in general been applied to the different states of fact with consistency and due appreciation.

Finding that neither the Waldrop nor the Realty Trust Company loan stipulated for usury, other questions become immaterial. For the reasons assigned, the judgment of the trial court is affirmed.

FUNDERBURK, Justice (dissenting).

I am unable to say that Judge LESLIE'S opinion is not in accord with some, if not all, of the decisions cited in its support. That the decision sustains recovery of interest upon a contract condemned by the Constitution and laws of this state as usurious I have no doubt. That no sound principle distinguishes the contract in this case and at least some of the cases cited in the opinion from the contracts involved in the cases of Shropshire v. Commerce Farm Credit Co., 120 Tex. 400, 30 S.W.(2d) 282, 39 S.W.(2d) 11, 84 A. L. R. 1269; Deming Inv. Co. v. Giddens, 120 Tex. 9, 30 S.W. (2d) 287; Dallas Trust & Sav. Bank v. Brashear (Tex. Com. App.) 65 S.W.(2d) 288; and Commerce Trust Company v. Best (Tex. Com. App.) 80 S.W.(2d) 942, I am equally free from doubt. I cannot read in any of the cases an intention to overrule the last-named decisions. On the contrary, there appears ample evidence that no such intention exists. Under these circumstances I feel justified in freely expressing my views.

Experience amply demonstrates that a legal question is never settled until it is settled right. Notwithstanding the great volume of recent litigation calling for interpretation of the law relating to usury, the law is less certain now than ever before. The uncertainty springs from no inherent difficulty in the subject, but rather, it seems to me, from incorrect assumptions or declarations in opinions of the courts, usually not necessary to a correct decision in the particular cases. There is no greater source of confusion and uncertainty than attempted distinctions which involve no substantial differences in principle.

There are but three factors necessary to be known in order to determine correctly whether any contract is free from the taint of usury. They are: (1) The amount of the loan; (2) the term of the loan; and (3) the amount of the agreed compensation. Nothing else is important except as an aid in determining one or more of these three things. (All italics hereinafter employed, whether in quotations or not, unless otherwise indicated, are the writer's.) In considering whether a contract be usurious, it is *wholly immaterial as to when, according to its provisions, interest is to be paid.* Many of the decisions erroneously assume the contrary. The *time* of the *payment* of compensation for the "use, forbearance or detention of money" is not an element in either of the definitions of "interest" or "usury." The assumption that the time of payment is material is evidently the result of confusing the "time of payment" of compensation with the "time of use" of the money loaned. The time of the use is important—the time of payment is unimportant.

If the time of payment of interest be immaterial, then it follows that *a contract is not necessarily usurious which requires a borrower to pay more than 10 per cent. of a loan in any one year as interest.* It would only be usurious, necessarily, if the contract requires him to pay (as interest) more than 10 per cent. of the loan for the use of the money for only one year or less. If by any payment or payments of interest made within a given year more than 10 per cent. of the loan be paid, it is not usury unless the total sum to be paid as interest be more than 10 per cent. per annum for *the term of the loan.*

The only importance of a provision for acceleration in the due dates for repayment of a loan, or parts thereof, is that it contingently shortens the term of the loan, and because thereof (and only because

thereof) may have the effect of rendering an otherwise legal contract usurious. As to obligations to pay only interest in specified amounts at stated times, no acceleration provision can alone make an otherwise legal contract usurious. Only provisions in a contract for acceleration of the time of payment of the *loan*, as distinguished from *interest* upon the loan, are important upon a question of usury.

Under the decisions in Shropshire v. Commerce Farm Credit Co., supra, and Parks v. Lubbock, 92 Tex. 635, 637, 51 S. W. 322, in testing whether a particular contract be usurious or not, the shortest time in which, under any contingency specified in the contract, the borrower has the right to use the money without the duty to repay it, must be treated as the term of the loan. When such shortest term has been ascertained, the next inquiry is, How much is the total compensation which under the provisions of the contract the borrower has promised to pay *at any time* for the use of the money during such shortened term? The only other necessary inquiry is: Does such total amount of compensation for the use of the borrowed money during only the shortened term exceed a rate of 10 per cent. per annum? In other words, when the amount and the shortest term of the loan and the amount agreed upon as compensation for the loan for such shortened term are ascertained, it becomes a matter of simple calculation whether such compensation exceeds, or not, a rate of 10 per cent. per annum.

I know of no decision, in a case wherein the question was presented for determination, which holds that the usury statute forbids the prepayment of interest in any amount not exceeding a rate of 10 per cent. per annum for the full term of the loan. It seems to have been assumed in Shropshire v. Commerce Farm Credit Co., supra, and Bothwell v. F. & M. State Bank & Trust Co., 120 Tex. 1, 30 S.W.(2d) 289, 76 A. L. R. 1480, that prepayment of the maximum amount of legal interest was in principle usurious, although sustained on the ground that repeated decisions had made it lawful. I am wholly unable to see any warrant for that assumption. A's wife gets a $500 bill as a birthday present from her father. She requests her husband to use it to purchase a supposedly valuable option, let us say, costing $1,000. A goes to a banker, proposes to borrow $1,000 for five years with 10 per cent. per annum interest payable in advance. The banker makes out a note in the terms of the offer, and, when it is signed, credits A's account with the full $1,000, and A hands him as full payment of interest the $500 bill belonging to his wife. The borrower thereby acquires the right to use for five years the $1,000. He is under no duty to repay any part of it during such term of the loan. He thereafter owes nothing as compensation for such use, since that has been fully paid. Only some optional right in the contract, by which the agreed term of five years could be shortened, would make such a contract offend against the law of usury under either of the statutory definitions of "interest" or "usury."

If it be conceded that full prepayment of interest might be made a device to cover a usurious contract, the fact would remain that, as the illustration shows, it is not necessarily such. The contract in the Bothwell Case was not condemned because of its provision for prepayment of full legal interest, but only because for the use of the money for a given time there was agreed to be paid, not only 10 per cent. per annum as interest, but an additional 10 per cent. of such interest, thus necessarily swelling the total amount of compensation for both the use of the borrowed money and detention of promised interest thereon to a sum in excess of the rate of 10 per cent. per annum for the term of the loan. If A applies to B for the loan of such a sum of money, to be repaid one year from date, with interest at the rate of 10 per cent. per annum in advance, as will enable him to pay such interest and have $90 for other uses, what would be the true amount of such loan? Would it not be $100? Is there any law which prohibits one from borrowing money to pay interest? If the $10 retained by B out of the note for $100 (due one year from date with interest from maturity) be full compensation paid by A for the use of the money borrowed for one year, how could it also be $10 never loaned to A? If the $10 remained the money of the bank at all stages of the transaction, which it would if only $90 was the total sum loaned, how could it serve as a payment of interest by A? At least, would not such a note, under the facts stated, be equally as susceptible to the construction that it evidenced a promise to repay a loan of $100 as a loan of $90? And, if so, should it not be given the one of two possible constructions which would make it legal, rather than illegal? But, upon this point, it is sufficient for the purposes of the present discussion to re-

ly alone upon the proposition, undoubtedly established by the Bothwell Case itself, that a contract is not usurious in which a borrower promises to pay the maximum legal rate of interest in advance upon a loan for only one year, or less.

For the sake of emphasis and more detailed examination of its correctness, let me repeat here substantially the statement made before, that *in determining whether a contract provides for the payment of usurious interest it is wholly immaterial when the interest is to be paid.* A contrary assumption seems to have constituted the sole basis upon which the two contracts *in the same form* involved in Dallas Trust & Sav. Bank v. Brashear (Tex. Com. App.) 65 S.W.(2d) 288, and Lincoln Nat. Life Ins. Co. v. Anderson (Tex. Com. App.) 80 S.W.(2d) 294—the one declared usurious, and the other not—were distinguished. In the opinion denying a rehearing in the Anderson Case (Tex. Com. App.) 81 S. W.(2d) 1112, 1113, the court said: "It is insisted that the form of contract in this case is identical with the form of contract which was involved in the Brashear Case. This may be true, but the significant feature of the Brashear Case was that the 2 per cent. additional interest on the principal loan for the ten-year period was 'squeezed' into five installments, payable during the first five years of the loan. This resulted in the actual payment of more than 10 per cent. interest for the first year. * ` * * It is evident therefore that the decision in the Brashear Case did not turn upon the accelerative provisions of the deed of trust at all, but on the fact that there was actually a usurious rate of interest provided for and paid during the first year of the loan."

Here is clearly manifest the view that a contract may or may not be usurious, depending solely upon whether or not it embraces a promise to pay interest in certain installments *within a particular time,* or payment of the same amount of interest in smaller installments *within a longer period of time.* Upon this same view, it is stated or implied in a number of decisions that, if all the provisions of a contract may be performed without the borrower being required to pay more than 10 per cent. in any one year, the contract is not usurious. That this is incorrect is, I think, susceptible of absolute demonstration. A borrows of B $1,000, executing his note therefor, in which he agrees to repay same five years from date, with interest thereon at 8 per

cent. per annum. At the same time, in a separate note, he promises to pay $180 of the interest upon the loan in 10 equal annual installments of $18. The first year he will pay $98—a sum less than 10 per cent. of the loan. Each year thereafter, until the principal note is paid, he will pay $98 —a sum less than 10 per cent. of the loan for any year. The last five payments on the interest note, aggregating $90, will be made after the term of the loan has ended and after the obligation to repay the borrowed money has been fully discharged. When all notes have been paid, as provided in each, A will have paid less than 10 per cent. of the loan in any year, but will have paid a total amount of interest in the sum of $570. This amounts to a rate of 11⅖ per cent. per annum for the five-year term of the loan. It is apparent from this illustration that, if the proposition which constituted the only answer to the contention that the decision in the Anderson Case was in conflict with the decision in the Brashear Case be sound then the law against usury may be completely evaded by the simple device of stringing out the interest payments over a number of years. It should require no argument to show that, if usury cannot be avoided by stringing out the interest payments, neither can an otherwise legal contract be made usurious by "pinching" the interest payments. If neither "stringing out" nor "pinching in" the interest payments, as provided in a contract, can affect the question of usury, that proposition at the same time establishes the further proposition above asserted, that a provision in an interest note, or the lien securing same, giving an option to accelerate payment of interest notes or installments, is of no importance.

An important fact to be kept in mind is that, when one only seeks release from his promises to pay interest in a contract claimed to be usurious, it is wholly immaterial whether any usurious interest has been paid or not. A contract is illegal, or not, from the very moment it is made. Whether usurious interest has in fact been paid, and, if so, the amount so paid, can only be important in a statutory penalty suit or where a question of the application of payments be involved. Where the last-mentioned questions are involved, they have no bearing upon, and afford no aid in, an inquiry as to whether the contract is, or is not, usurious. It therefore follows that each promise in a contract to pay a certain amount of interest at a specified fu-

ture time is a promise, at the time it is made, to pay unearned interest. It is inconceivable that any interest upon a loan of money can be *earned* interest at the very time the loan is made and the promise given to repay it. Then how can any distinction be made in contracts based alone upon the proposition that those which provide for payment of *unearned* interest are usurious, while those which do not provide for payment of *unearned* interest are legal, when all contracts at the time they are made provide for unearned interest alone? Will it be answered that such distinction has reference, not to whether interest be earned or unearned at the time the contract is made, but the time the payments, according to the promises, are to be made? Let this be granted, then what? It simply shows that the basis of the attempted distinction is the false assumption, before referred to, that the time of payment of interest is immaterial; the corollary of which proposition is that it is unlawful to promise to pay interest in advance, or until after it shall have been earned. To the writer, the proposition seems incontrovertible that as to promises to pay for a loan, interest in definite sums at stated times in the future, it makes no difference whether such installments of interest will, at the time the promises of such payments mature, be earned or unearned, provided only no more interest is promised to be paid than will amount to 10 per cent. per annum for the *term* of the loan.

In this case, for the sake of brevity, we may consider the last contract as representative of both. The amount of the loan was certainly $3,250. The promise to pay the full amount of the loan was represented by the four principal notes, called the "bond." The maximum term of the loan was from June 5, 1929, to July 1, 1934, and the minimum term was six months, as fixed by two provisions: (1) That interest payments were to be made semiannually; and (2) that upon a failure to pay, when due, any installment of interest the entire indebtedness, both principal and interest, should at once become due and payable. The total amount of the several obligations to pay interest, *unless the contract contained a provision to the effect that upon the contingency of the shortening of the term of the loan there should be a corresponding abatement of a part of the interest and cancellation accordingly of interest notes and coupons promising to pay same,* was the sum of

$1,124.75—a rate of over 34 per cent. per annum for the six-month term of the loan.

The trouble with many of the contracts recently attacked as usurious, and of the contract in the instant case, is that they contain provisions for shortening, upon certain contingencies, the term of the loan without making provision for a corresponding abatement or cancellation of promised interest payments based upon the full term of the loan. The real problem, therefore, is one involving the proper construction of such contracts. If a contract expressly and plainly provides for such abatement and cancellation of promised interest payments, there will, of course, be no difficulty. The contract in this case contains no such provision.

The only provision in any of the several parts of the contract which could be argued as expressing an agreement for the abatement or cancellation of anything is the one in the first deed of trust, which refers to the contingencies of the state levying taxes upon the principal notes or interest, or upon the deed of trust or lien, or declaring that the lien or interest should be real estate and taxable as such while the property of a nonresident, and in any such contingencies requires the grantor to discharge such taxes or assessment, and then expresses as an obligation of the lender that, if such payment, together with the rate of interest provided in the bond, should "be construed by the court finally having jurisdiction hereof as requiring payment of this loan of money represented by said bond, of interest in excess of 10 per cent. per annum, the holder of said bond shall pay such excess." It is plainly to be seen that such provision does not relate to an optional shortening of the term of the loan, and is therefore immaterial in the present inquiry. Parenthetically, it may be observed it is not a provision for the abatement or cancellation of anything. It amounts to no more than an agreement that, if upon the happening of the named contingencies the obligation imposed upon the borrower should be held to make the contract usurious, the lender, upon an adjudication of such fact, would himself pay (necessarily meaning refund) the excess above the highest legal rate. Would an otherwise clearly usurious contract be rendered legal by including an agreement on the part of the lender to the effect that, if and when the contract should be declared by a court to be usurious, the lender would

pay the borrower the excess of the legal rate of interest?, If so, by that simple device a money lender could always protect himself against the liability of forfeiting the highest legal rate of interest upon his loan. The question is, of course, one beside the present inquiry, but presents, it seems to me, a very doubtful proposition. At least it justifies the doubt that any provision has for its subject-matter the abatement or cancellation of interest payments. But, aside from all that, the provision so specifies the contingencies upon which it can operate as clearly to exclude as one of such contingencies default in payment and the consequent shortening of the term of the loan. If, therefore, the contract embraces any provision for abatement and cancellation of promised interest payments, it must necessarily do so by implication only.

Can such an agreement be implied? To me, it seems there is an insuperable obstacle to such a conclusion. By his signed notes the borrower promised (expressly) to pay certain sums at stated times as interest upon the loan. Suppose he had an oral agreement that upon the contingency that any of the promised payments were accelerated he was not to be liable for the payment of certain of the interest notes. Could proof of such oral agreement be received in evidence? The parol evidence rule forbids the proof of any oral agreement "reducing, or increasing the amount stipulated in the written contract to be paid, as for example * * * an agreement that a less sum is to be paid upon a certain contingency or providing for a remission or rebate of a portion of the principal or interest." Robert & St. John Motor Co. v. Bumpass (Tex. Civ. App.) 65 S.W.(2d) 399, 402, and authorities there cited. Or let us suppose the real agreement was that, if there was any acceleration, there was to be a corresponding abatement and cancellation of the promised interest payments, which last-named provision was left out of the written contract by fraud, accident, or mistake. Could proof thereof be made in the absence of a pleading of fraud, accident, or mistake? The point is that such an agreement would be one at variance with the contract as written. Can an agreement ever be implied, the effect of which would be to vary the written contract? The presumption of an intention of the parties to make a contract free from usury cannot of itself legitimately serve to render otherwise plainly expressed provisions of the contract, either ambiguous or conflicting one with another. Such ambiguity must exist in the provisions of the contract before any presumption can come into operation as an aid in determining the intention of the parties. In other words, no presumption of an intention on the part of the borrower and lender to make a lawful contract can exist contrary to any intention certainly shown by the provisions of the contract itself. The very existence of the parol evidence rule as well as the necessity of pleading fraud, accident, or mistake as a basis for the reformation of contracts would seem to require a negative answer to the question, Can an agreement to abate or cancel expressly promised interest payments be implied?

But, even if an agreement to abate or cancel could, under some circumstances, be implied, surely it cannot be implied in a case where the contract plainly expresses an intention to the contrary. The contract in this case does express such contrary intention. There are provisions in both deeds of trust which, it seems to me, clearly show the intention was not to cancel any of the interest payments. The first deed of trust providing for sale of the property upon default in payment of either principal or interest directs that the proceeds be applied to "the debt, and all sums of money due *or to become due hereunder* with interest as agreed," etc. The grantor in said deed of trust expressly obligated himself, among other things, "to pay the sums maturing in said bond (that is, said four notes) according to the terms thereof *with interest as specified,"* etc. The interest was specified in the attached coupons. Again: Relating to insurance policies, the proceeds of which were payable to the Realty Trust Company, it was provided that: "The proceeds thereof to be applied upon the indebtedness secured hereby * * * whether said indebtedness be due *or not."* Another provision related to certain contingencies, one of which was, "if default be made in payment of said bond, or any one of them, *or any interest thereon,"* and stipulated "then, at the option of the legal holder or holders of said bond, the whole indebtedness hereby secured, shall at once become due * * * and may be collected by suit or proceeding hereunder." By these provisions the due dates of all interest payments secured by the first deed of trust were expressly subject to being accelerated; i. e., made due and payable. How could they upon a named contingen-

cy be made due and payable and upon the same contingency be abated and canceled? The second deed of trust securing the several notes (the note) given exclusively as a part of the interest on the loan contained provisions as follows: "If default shall be made in the payment of *any part of said indebtedness, or of any of said notes* * * * the trustee at the request of the holder of any past due and unpaid charge or item secured hereby shall sell the property subject to the lien of said first deed of trust, and *subject also to the lien of this instrument and unmatured notes or installments of the indebtedness hereby secured* to the highest bidder for cash," etc. In the alternative, it was provided, "if the amount of interest paid and accrued on said first deed of trust bond (that is, the principal debt of $3,250) plus the amount of said note (that is, the $149.-75 interest notes) shall not aggregate more than 10 per cent per annum on said bond for the time it shall have run, at the option of the legal owner and holder of said note, the whole amount thereof shall at once become due and payable and the trustee may sell said premises as herein set forth * * * that after such sale he shall make, execute and deliver * * * deed * * * subject, however, to the lien of said first deed of trust *and to the lien of this instrument and unmatured notes or installments of the indebtedness hereby secured.*" Does this permit to be implied an agreement to cancel all interest obligations not already matured at the time of such sale? It merely evidences the mistaken notion that it was all right if the sale should be made for not exceeding the principal of the loan and 10 per cent. per annum interest to date of sale, even though the other promised interest payments were still outstanding, and continued to be secured by the loan. This is made absolutely certain by the provision which follows expressing as clearly as language could express the intention that the unmatured obligations should remain in effect and be finally collectible. Here is the provision: "It is expressly stipulated and agreed that foreclosure, pro tanto, of the lien of this deed of trust whether by action or by the exercise of the power herein contained *shall not affect or impair the lien hereof for unmatured installments or notes herein recited to be secured* * * * and sale of such lands and tenements *shall not exhaust the power of the trustee, but as often*

*as default shall be made* as aforesaid, the power of sale or to foreclose by action may be exercised; and the purchaser or purchasers at such sale shall take subject to such prior lien and to the *unmatured notes and other sums secured hereby.*"

The election to accelerate payment of all the principal and interest of a loan and enforce payment thereof was held in Walker v. Temple Trust Co. (Tex. Com. App.) 80 S.W.(2d) 935, 937, to have the effect which the court emphasized in a quotation from Moore v. Cameron, 93 N. C. 51, as follows: "This *election* exercised *involves the surrender of all the outstanding interest bonds not required for what was then due, and so will the Court adjudge."* (Italics are the court's.) To so adjudge in this case would be to imply an agreement directly contrary to the intention clearly expressed in the contract that, upon default in the payment of certain installments of interest when due and foreclosure of the lien securing same, the foreclosure was only to be pro tanto, and the lien to remain in force as security for the installments of unearned interest not due.