## SPILLER et al. v. BELL et al.
### No. 9775.

Court of Civil Appeals of Texas. Galveston.
Dec. 2, 1932.

Rehearing Denied Dec. 22, 1932.

Williams & Williams, of Austin, for appellants.

Lewis Rogers and B. C. Billingsley, both of Houston, for appellees.

PLEASANTS, C. J.

This suit was brought by appellee R. E. Bell against appellants and other defendants to recover the title and possession of the east half of section 84, block 2, Houston & Texas Central Railroad Company survey in Harris county.

The defendants named in plaintiff's petition are R. C. Lambie, Gibbs Spiller and wife, Annie Spiller, the Guaranty State Bank, a private corporation, and the Gulf Produc-

tion Company, and a number of vendors in the chain of title specially pleaded by plaintiff, and the unknown heirs, devisees, and legal representatives of each such named vendors. All these remote and intermediate vendors and their heirs, devisees, and legal representatives were cited by publication.

Upon the call of the case for trial in the court below, plaintiff dismissed his suit against the heirs, devisees, and legal representatives of the vendors in plaintiff's chain of title who were made parties defendant as above stated. All of the other parties announced ready for trial without a jury. After hearing the evidence, the trial court rendered judgment in favor of the plaintiff against all the remaining defendants for the title and possession of the land sued for. From this judgment the defendants Lambie, Spiller and wife, and I. D. Childress prosecute this appeal.

The evidence shows that the title to all of the land passed through I. D. Childress, through whom appellee claims, to R. C. Lambie on February 27, 1913, and on January 6, 1914, R. C. Lambie executed a deed of trust to George E. Shelly to secure a note for $4,000 owing by him to John Burwell Pope, the said note being due five years after its date. On August 3, 1914, Lambie conveyed the land to J. E. Smith, who assumed the Pope note. The land was passed back to Lambie by mesne conveyances, in which each grantee except Lambie assumed the Pope debt; the reconveyance to Lambie being dated February, 1917. To this point the deed of trust lien securing the Pope note was unchanged, except by the assumptions of Lambie's vendees and his failure to reassume in the reconveyance to him.

On October 3, 1917, R. C. Lambie conveyed the surface of the land, together with one-third of the minerals therein, to John Wolf, by deed recorded in volume 389, p. 427, of the Deed Records of Harris county, and as part of the consideration for said deed Wolf specifically assumed the payment of the note to Pope.

The grant to Wolf was by said deed "subject to the oil and mineral rights hereinafter reserved," and the habendum limits the grant as follows: "To have and to hold the above described tracts of land and premises unto the said John Wolf, his heirs and assigns forever, subject to the oil and mineral reservation hereinafter; and I do hereby bind myself, my heirs, executors and administrators to warrant and forever defend the right and title of the above described premises unto the said John Wolf, his heirs and assigns, against the lawful claim and claims of all persons whomsoever claiming or to claim the same or any part thereof. It is expressly understood that two-thirds of all oil and minerals in the above described tracts

of land shall be and remain the property of the grantor herein and are here reserved unto him and not conveyed by this deed, and the right in and to said two-thirds of all oil and minerals is hereby reserved by the grantor herein unto himself."

On March 19, 1920, Lambie and Wolf entered into a contract in which they agreed that Lambie was then owner of two-thirds, and Wolf one-third, of the oil, gas, and minerals in and under said land, and caused this contract to be recorded in Harris county.

Thereafter, on February 27, 1922, John Wolf conveyed the land to Gibbs Spiller, who also specifically assumed the payment of the Pope note, and the deed says it is the same land which was conveyed to him by R. C. Lambie by deed dated October 3, 1917, recorded in volume 389, p. 427, of the Deed Records of Harris county. The deed referred to for description of the land conveyed is the identical deed which reserved two-thirds of the minerals in Lambie.

On March 15, 1922, Gibbs Spiller and his wife, Annie Spiller, executed a deed of trust on the land to M. H. Gossett as trustee to secure a note for $3,200 which Spiller had borrowed from the Federal Land Bank to pay the balance of $2,817 then owing on the Pope note. Lambie was not a party to this loan transaction, and the deed of trust refers to the deed which reserved two-thirds of the minerals in Lambie, for description of the property on which the lien was fixed. On the same date Pope assigned and transferred the unpaid balance of $2,817 to the Land Bank, and also "all of the right, title and interest now owned or held by the grantor in and to said land by virtue of said note or notes and the lien securing the same." This note had and has never been renewed by Lambie, and he has not been a party to any transaction affecting its maturity since its execution on January 6, 1914, or the increase of the debt by Spiller and the Land Bank. This $3,200 note is payable in installments extending over thirty-three years. The value of the land decreased from $6,400 to $3,200 after the extension and increase in the amount of the note, and before the sale in 1927.

The Pope note was executed by Lambie on January 6, 1914, and was due January 6, 1919, and as to him it became barred by limitation on January 6, 1923. The full amount due on this note was paid Pope out of the $3,200 loan made by Spiller and wife from the Land Bank.

On March 24, 1923, Lambie conveyed his two-thirds of all of the oil and minerals to Spiller, reserving a royalty of one-sixteenth to himself.

On May 12, 1927, M. H. Gossett, trustee, acting under power conferred by the deed of trust before mentioned, executed a power of

attorney by which he appointed J. W. Canada his agent and attorney in fact. Thereafter, on June 27, 1927, Canada, acting under such power of attorney, at the request of the Fairbanks National Farm Loan Association, the holder of unpaid installments due on the Spiller $3,200 note, advertised and sold the property conveyed by the trust deed from Spiller and wife to Gossett to secure the payment of the note. The Fairbanks Association became the purchaser at this sale, and thereafter conveyed the property to appellee.

The deed from Wolf to Spiller, the deed of trust by Spiller and wife to Gossett, the power of attorney from Gossett to Canada, the deed from Canada to Fairbanks Association, and the deed from the Fairbanks Association to the plaintiff Bell, each refer to the deed from Lambie to Wolf, dated October 3, 1917, and recorded in volume 389, p. 427, of the Deed Records of Harris county, for description.

The pleadings of appellants in the trial court and their briefs in this court fully present the defenses, and raise the issues hereinafter discussed and decided, and need not be further here stated.

■ Upon the facts before set out, we agree with appellants that the deed from Wolf to Spiller, under which appellee deraigns title, did not pass title to two-thirds of the oil and other minerals in and under the land. When Lambie conveyed to Wolf, he expressly reserved the title to two-thirds of the oil and minerals. This deed, which was of record in the deed records of Harris county, was referred to in the deed from Wolf to Spiller for a description of the land thereby conveyed. The record of the deed was correctly stated in the deed from Wolf. The reservation of two-thirds of the oil and minerals in the land in the Lambie deed was part of the description of the property thereby conveyed, and we do not think that Spiller or those holding under him can be held to have acquired any title by the Wolf deed to the minerals in the land which the deed from Lambie to Wolf expressly reserves.

■ The deed of trust executed by Lambie to secure the Pope note did not divest him of the legal title to the land. He still held the superior legal title, subject, however, to the right of Pope or the holder of the Pope note to foreclose the lien given by the deed of trust through a sale under the provision of the trust, and thereby vest the legal title in the purchaser at such sale. Bradford v. Knowles, 86 Tex. 509, 25 S. W. 1117.

■ There can be no question of the fact that a severance of two-thirds of the oil and minerals from the land by Lambie was effected in his deed to Wolf, nor of his legal right to make such severance. Paddock v. Williamson (Tex. Civ. App.) 9 S.W.(2d) 452, 454.

■ All of the deeds under which appellee claims title to all of the oil and other minerals in the land refer to the deed from Lambie to Wolf by which the severance was made, just as did the deed from Wolf to Spiller, and appellee is charged with notice that he acquired no title to two-thirds of these minerals by any of these deeds.

■ It seems clear to us that appellee acquired no title to the two-thirds interest in the minerals in the land in controversy in this suit under any of the deeds executed by Spiller and wife, or any of their vendees, and certainly did not acquire title to such minerals under the deed of trust executed by Spiller to secure the Pope note and the transfer of this note and all of Pope's interest in the land under the deed of trust. There has been no foreclosure of the Pope lien. If suit had been brought to foreclose this lien, it is well settled that, having accepted the deed of trust from Spiller and advanced the money to pay off the balance of the Pope note and extended the payment of the indebtedness without the consent of Lambie, appellee could not have held Lambie liable on the Pope note. By this extension and change in the terms and conditions of the indebtedness Lambie was released from all liability thereon, and appellee could not in any event under the transfer from Pope have more than a lien upon Lambie's reserved interest in the land to secure the payment of any balance due on the Pope note, and the pleas of limitation made by appellants in their respective answers would have been a good defense to such claim of lien. Hill v. Hoeldtke, 104 Tex. 594, 142 S. W. 871, 40 L. R. A. (N. S.) 672; Maier v. Thorman (Tex. Civ. App.) 234 S. W. 239; Red River National Bank v. Bray, 105 Tex. 312, 148 S. W. 290.

■ The appellants further contend that the note for $3,200 executed by Spiller to the Land Bank was usurious, and that the sale of the land by the trustee under the deed of trust executed by Spiller having been made to enforce the payment of usurious interest, was void and passed no title to the purchaser.

While the question may not be wholly free from doubt, we have reached the conclusion that the note was not usurious, and the land was not sold to enforce payment of usurious interest. The note provides that the $3,200 for which it is given shall bear interest at the rate of 6 per cent. per annum, and that the principal and interest shall be payable in annual installments of $112. If the note had run for the full thirty-three year term of the loan, the aggregate sum of principal and interest would have been $7,363.33. The note further provides that the "failure to pay any installment or interest when due shall at the option of the holder thereof mature the entire indebtedness remaining unpaid." The

deed of trust executed by Spiller provides that, in case of default in the payment of any of the installments, the holder of the note or owner of such unpaid installment may have the land sold for the amount of the due and unpaid installments, subject to the deed of trust lien for the remainder of the note. The sale under which appellee claims title was made at the request of the Fairbanks Loan Association, who held by assignment from the Land Bank unpaid installments due on the note. Such sale was only made for the amount of those installments, and the land was sold subject to the lien for the remainder of the note. It is, we think, clear that there was no usurious interest involved in this sale. Nor do we think any sale for usurious interest was authorized by the terms of the note or the deed of trust.

■■ The amount of principal and interest which make up the installments of $112 provided for by the note are separately stated in the indorsement contained on the back of the note, and which are a part of the note. We do not think the acceleration provision in the note above quoted can be reasonably construed as authorizing collection of usurious interest, and there is no evidence that either of the parties so construed or understood it. "The entire indebtedness remaining unpaid," as that term is used in the acceleration clause of the note, cannot be reasonably construed to mean more than the $3,200 principal of the note and 6 per cent. interest thereon, and the provision that past-due installments of principal and interest shall bear interest at the rate of 6 per cent. per annum does not make the note usurious.

■ It may be true, as contended by appellants, that the provision in the deed of trust authorizing the sale of the land for the amount of the unpaid installments and subject to the lien for the remainder of the indebtedness evidenced by the note tended under the conditions existing at the time of this sale to restrict the probable purchasers at such sale, and thereby cause loss to appellants Spiller. But this cannot make the contract usurious. These appellants made this contract, and, if at the time the default occurred and the sale was made the value of the property had increased, such provisions would likely have benefited the appellants.

The judgment heretofore rendered and entered by this court reversing and rendering the judgment of the trial court in part is erroneous, in that it affirms the judgment against the appellant I. D. Childress. This erroneous judgment was rendered by us because no separate brief was filed by Childress complaining of the failure of the court to establish and foreclose his asserted vendor's lien against appellee and the defendants Lambie and Spiller upon the two-thirds interest in the oil and other minerals in the land conveyed by Lambie to Spiller, and we inadvertently overlooked the fact that the other appellants in a joint brief which was filed by attorneys representing all the appellants, including Childress, expressly ask: "That appellant Childress have his judgment foreclosing his vendor's lien on two-thirds of the minerals to pay the $658.00 renewal note executed by Spiller to Lambie on June 4, 1927, bearing interest at 8% from its date."

It is apparent upon this state of the record that appellant Childress is entitled to a judgment of foreclosure as requested in the joint brief of all the appellants.

The judgment heretofore rendered and entered will upon our own motion be corrected as above indicated.

Reversed and rendered in part, and affirmed in part.