**BARTON et al. v. KANSAS CITY LIFE INS. CO.**

No. 13443.

Court of Civil Appeals of Texas. Fort Worth.

Nov. 6, 1936.

J. W. Hassell Jr., of Dallas, and W. V. Dunnam, of Waco, for appellants.

W. F. Johnson and Hamilton, Lipscomb & Wood, all of Dallas, for appellee.

SPEER, Justice.

Appellee, Kansas City Life Insurance Company, sued appellants Mrs. Allie Barton, a widow, and O. A. Barton, in the district court of Dallas county, Tex., on an alleged debt evidenced by one note in the principal sum of $2,500, dated September 21, 1925, payable to the order of Realty Trust Company, due February 1, 1936, bearing interest at the rate of 5½ per cent. per annum, payable annually according to the terms of eleven interest coupon notes thereto attached; all duly executed by Mrs. Allie Barton.

Allegations were made by appellee that it was "a corporation duly incorporated by and under the laws of the State of Missouri, having its domicile and principal place of business in Kansas City, State of Missouri, and having a permit to do business in the State of Texas."

It was alleged that the note sued on provided that if default be made in payment of either principal or interest when due, then all of the principal and interest shall, at the option of the legal owner and holder thereof, become at once due and payable without notice. That the note further provided that an additional sum of 10 per cent.

of the amount due thereon should be paid as attorney's fees if same be placed in the hands of an attorney for collection.

Appellee further alleged that the indebtedness was secured by a deed of trust lien duly executed by Mrs. Allie Barton to F. O. Ketchum, trustee, on real estate described by metes and bounds in the petition.

Further allegation was made that for a valuable consideration and before maturity the said Realty Trust Company indorsed, assigned, transferred, and conveyed to appellee said note and the lien securing it, and that appellee was, at the time of instituting the suit, the legal owner and holder thereof.

Allegation was made of default in the payment of interest due on February 1, 1934; that by reason thereof appellee had declared the note due and payable and had placed it in the hands of attorneys for collection, and that by reason of the provisions contained in the note the maker had promised to pay 10 per cent. of the amount due, as attorneys' fees; that O. A. Barton was claiming an interest in the lands covered by the deed of trust, but that such interest as he may have was subject to the rights of appellee.

Prayer was for judgment for the debt against Mrs. Allie Barton and for a foreclosure of the lien as against both Mrs. Allie Barton and O. A. Barton.

 Appellants' second amended answer, upon which they proposed to go to trial, consists of sixteen pages, and contains some very interesting allegations, in an effort to show the indebtedness sued on was not due, and that the contract out of which the borrowing of the money by Mrs. Barton grew was usurious. A general demurrer was sustained by the court to this answer; and to properly consider the ruling of the court in this respect, it becomes necessary for us to make as nearly as we can a statement of the material allegations therein. The amended answer contained a general denial which, of course, put in issue the allegations of appellee's petition, and while the ruling of the court in sustaining the general demurrer was not confined to appellants' special pleas, but covered the general denial as well, the record before us clearly shows appellants were not denied any rights they had under the general denial; the appellee was required to make its proof of all material allegations. The oversight in the judgment of the court sustaining the general demurrer to the whole amended pleading worked no hurt to the appellants in that respect.

The amended answer alleged that the $2,500 note was due and payable on February 1, 1936, and that it was not due when the suit was instituted, and as a reason for the conclusion so pleaded they alleged the contract out of which the note grew was usurious and all interest provided for therein constituted usury, that the notes evidencing interest were void, and the provisions in the note and deed of trust providing for the acceleration of the maturity of the principal note at the option of the owner and holder upon failure to pay any one of the interest installments was void and unenforceable.

The allegations of the usurious nature of the transaction were, in substance, that at the time of the execution of the $2,500 note, to wit, on September 21, 1925, Mrs. Barton also executed eleven interest notes in the sum of $137.50 each, due and payable on February 1st of each year thereafter until and including February 1, 1936. That each the principal note and the interest notes provided for interest at the rate of 10 per cent. per annum after their respective maturities.

Allegation was made that the deed of trust securing the indebtedness constituted a part of the transaction, and that by its terms it was provided, "If default should be made in the payment of said bonds, or any one of them, or any installment of interest thereon, when the same shall become due, and any one of the sums shall remain unpaid, or in case of the breach of any of the agreements and contents herein mentioned, or in any case herein provided, then, on the application of the legal holder or holders of said bond, the said trustee or his successor or successors, appointed hereunder, is hereby authorized and empowered to sell the property hereby conveyed to the highest bidder for cash * * *," the allegation continuing in the language of the instrument which is the usual and customary provisions for notice, etc., of sales of real estate, and that the instrument provided for a distribution of the proceeds of such sale to the payment: "First, all charges, costs and expenses of executing this trust, including a fee of five per cent to the trustee; second, to the debt and all sums of money due, or to become due hereunder with interest as agreed, in such priority as he may determine; and third, shall pay

the overplus, if any, unto said grantor, his, her or their heirs, legal representatives, or assigns, on reasonable request."

Allegation was further made that the deed of trust contained the following provisions:

"It is specially agreed, that if any taxes or assessment shall be imposed within the state of Texas upon said bond, or upon the interest of the said trustee or his successors, or any holder of said bond, in said premises, or upon the lien of this instrument, or said lien or interest shall be declared to be real estate, and shall as such or otherwise be so taxed or assessed, while said bond or lien is the property of a non-resident of the state of Texas, then the grantor, heirs, legal representatives or assigns shall at once discharge said tax or assessment and neither the said holder of said bond or said trustee nor his successors shall be liable therefor, provided, that if the payment of the rate of interest provided for in said bond and the taxes and assessments referred to in this clause shall be construed by the court finally having jurisdiction thereof as requiring payment on the loan of money represented by said bond of interest in excess of ten per centum per annum, the holder of said bond shall pay such excess.

"And it is further specially agreed, that if default be made in payment of said bond or any of them, or any interest thereon, or in the performance of any of the covenants or agreements herein contained, or if any of the taxes or assessments referred to in the last preceding paragraph hereof shall be imposed, then at the option of the legal holder or holders of said bond, the whole indebtedness secured hereby shall at once become due, without notice, and may be collected by suit or proceeding hereunder."

Appellants alleged that by the terms and conditions of the deed of trust and under the provisions quoted, the appellee was thereby empowered and authorized, in case of default and sale of the property within the first year after the execution thereof (there may be a misprint in the transcript, they must mean second year, since there could be no default in payment during first year), to sell the property and apply the proceeds from the sale to the principal indebtedness of $2,500 and to $1,350 represented by the ten interest notes of $137.50 each with 10 per cent. interest after maturity on each of the principal and interest notes, and appellee was thereby authorized to demand, collect, and receive a greater amount of interest on the loan than 10 per cent. per annum. In this connection they further aver that the notes and lien were at all times subject to taxation in Dallas county, Tex., and in the city of Dallas; that the tax rate of said taxing bodies by a table of rates for the period of time covered and shown was an average rate of about $3.50 on the $100 valuation for each year, and that said notes and lien were of the reasonable cash value of the amount of said principal note; that by the terms and provisions of the paragraph in the deed of trust (above quoted) it was intended by the lender that the borrower should pay such taxes, and with the amount thereof added to the interest shown to be · charged and exacted, a greater rate than 10 per cent. per annum was charged and demanded for the loan of said money.

The additional allegation is made that contemporaneously with the execution of the principal and interest notes above mentioned, Mrs. Barton was required to execute to Realty Trust Company another set of interest notes consisting of eleven obligations of even date with the principal note, one in the sum of $13.34 and ten for $37.50 each, due and payable on February 1, 1926, and one each year thereafter until February 1, 1936, inclusive.

Several pages of said answer are devoted to statements and calculations . of interest on the loan, as made and pleaded by appellees to illustrate the amounts that were possible for the owner of the notes to demand and receive; such illustrations as if, upon failure to pay an installment or interest note, the holder could. declare the principal indebtedness due, whereby it would draw 10 per cent. interest as after maturity, amounting to $250 per year, and in addition could demand the payment of the past-due interest note of $137.50 with 10 per cent. interest thereon, or $151.25, and the smaller interest note of $37.50 and 10 per cent. interest on it, or $41.25, or an aggregate of $442.50 for the use and detention of said principal sum. In certain of the calculations an additional sum of $100 is added as for taxes accumulating against the notes and lien.

To the allegations made· in an effort to show the contract was usurious and that

because thereof all interest notes and obligations were void and consequently the provisions of acceleration in the original note and deed of trust were ineffective, the trial court sustained a general demurrer, and the case went to trial before the court without a jury. The appellee introduced in evidence its note, the deed of trust, a transfer of the debt and lien to it, and a deed from Mrs. Allie Barton to O. A. Barton. The court rendered judgment for the amount found to be due on the note as principal, interest, and attorneys' fees, and decreed a foreclosure of the deed of trust lien in the usual form. From this judgment the appellants have perfected their appeal to the Court of Civil Appeals for the Fifth Supreme Judicial District, which cause was by our Supreme Court ordered transferred to this court for consideration.

Appellants base their appeal on four assignments of error, each of which is treated by them as both an assignment and proposition, and as such we shall consider them. They are in substance:

1. The plaintiff had alleged it was a foreign corporation with a permit to do business in Texas, the testimony showing the contract sued on was executed in Texas and purely intrastate in character, and there was no proof offered that appellee had complied with the law and obtained a permit to transact business in Texas, and the court should not have rendered judgment in its favor.

2. The court erred in sustaining a demurrer to appellants' answer and in rendering judgment for appellee, when its suit was based on a note which upon its face matured February 1, 1936, and was not due at the time of the institution of the suit. For the reason that the only condition on which the note could be declared due at a date earlier than that mentioned in its face depended upon an optional declaration by the owner to mature it upon the failure of the maker to pay any one of a series of interest notes executed at the time the loan was made, the contract was usurious and all interest notes were void, and the provision in the principal note for the acceleration of its maturity for failure to pay a void interest note was void and could not serve as a legal excuse for such optional declaration of maturity.

3. Where appellee sues, as in this case, on a note which provided for the acceler-

ation of the maturity of the principal at the option of the owner and holder if any installment of interest is not paid at maturity, in the absence of proof that the owner had exercised its option of maturity, it was error for the court to render judgment in its favor for the debt and foreclosure.

4. It was error for the trial court to render judgment for appellee for attorneys' fees on the note, absent proof that it had been placed in the hands of attorney for collection and that the amount sued for was reasonable.

The first assignment involves a construction of Rev.Civ.St. art. 1531, and article 1536, as amended by Acts 1931, c. 158, § 1 (Vernon's Ann.Civ.St. art. 1536). Article 1531 provides the conditions under which a foreign corporation may obtain a permit to transact business in this state, and article 1536, as amended, in so far as is necessary to state here, provides: "No such corporation [incorporated under the laws of another state or foreign country] can maintain any suit or action, either legal or equitable, in any Court of this State upon any demand, whether arising out of contract or tort, unless' at the time such contract was made, or tort committed, the corporation had filed its articles of incorporation under the provisions of this Chapter." The remainder of the article is devoted to penalties and forfeitures against such corporation for violations of the provisions of the chapter.

These articles of our statutes have been before the courts many times, and practically every phase of them have been analyzed. From the weight of the authorities it seems to be well settled that unless the plaintiff's petition discloses the transaction is one of intrastate business or that it has established a general office in this state, it is not required of the plaintiff to prove that it has in fact obtained a permit to transact business in Texas. Even though the foreign corporation filing suit in the courts of this state does allege it is such foreign corporation and has a permit to transact business here, unless it discloses by its pleadings that the matters in controversy are intrastate, such allegations will be treated as surplusage. Under such a state of pleadings the defendant must allege and prove the plaintiff's inability to maintain the suit for these reasons; otherwise the question is not before the court.

It was said by the court in case of Washington-Dean Co., Inc. v. Crow Bros. et al. (Tex.Civ.App.) 1 S.W.(2d) 914: "But, if the petition does not disclose that the plaintiff is engaged in business in this state, or that the demand did not arise from an intrastate transaction, then the plaintiff need not allege that it has obtained the permit, in order to avoid the force of a general demurrer. New State Land Co. v. Wilson (Tex.Civ.App.) 150 S.W. 253; Crews & Williams v. Gin Co. (Tex.Civ. App.) 189 S.W. 793; Crisp v. Brewing Co. (Tex.Civ.App.) 212 S.W. 531. Tested by these rules, the petition of appellant in the court below was good as against demurrer."

█ It is contended by appellants in their brief that the notes and deed of trust along with the assignment of the debt and lien were shown to have been executed in Texas, and that therefore every transaction involved in the cause from the execution of the notes and deed of trust to and including the transfer to appellee transpired in the state, and that in this, it was shown to have been an intrastate matter. We think this is not the logical deduction to be arrived at from the facts shown. We are not warranted in assuming that because the papers were drawn in Texas, and perhaps the original transaction with Realty Trust Company was had in Texas, appellee's connection therewith was had or obtained by a transaction here. It is as fair to assume it purchased the note and lien from Realty Trust Company by negotiations through the United States mails as that it was done through personal contact. The one would be to hold the transaction was valid, while the other would render it ineffective, and the proper rule of construction would be that the act was valid rather than void, in the absence of evidence to the contrary.

We believe the rule as laid down by the Commission of Appeals in Oklahoma Tool & Supply Co. v. Daniels et al., 290 S.W. 727, 728, is decisive of the question before us. The plaintiff in that case alleged it was a corporation organized under the laws of the State of Oklahoma and had procured a permit to transact business in Texas. Judgment was rendered for the corporation in the trial court, and on appeal the cause was reversed and plaintiff's action ordered dismissed for lack of proof upon the trial that it had obtained the permit to do business in Texas. A writ of error was granted in the case, and the Commission, after quoting article 1536, said:

"The statute has no application, for instance, to a case shown by the pleadings to be one of interstate commerce. Miller v. Goodman, 91 Tex. 41, 40 S.W. 718; Allen v. Tyson-Jones Buggy Co., 91 Tex. 22, 40 S.W. 393, 714; Geiser Manufacturing Co. v. Gray, 59 Tex.Civ. App. 617, 126 S.W. 610; Keating, etc., Co. v. Favorite, etc., Co., 12 Tex.Civ.App. 666, 35 S.W. 417; Houston, etc., Co. v. W. R. Pickering Lumber Co. (Tex.Civ.App.) 212 S.W. 802.

"But here neither the petition nor the evidence shows whether the transaction out of which the note in controversy arose was or was not an interstate transaction, and therefore, of course, failed to show whether or not the case comes within our statute. It is clear, we think, however, that the rule should be the same as though the petition and evidence did show the nature of the transaction.

"Unless the vice in the plaintiff's case appears affirmatively in his petition, the failure to take out a permit is a defense to be pleaded by the defendant, and one, too, which, if not pleaded, is waived. Texas Packing Co. v. St. Louis, etc. Ry. Co. (Tex.Com.App.) 227 S.W. 1095. It would follow, therefore, that, unless the statute is invoked, either by allegations of the petition or by the terms of the answer, there is no issue raised as to which the evidence, whatever it may be, may apply. In 14a Corpus Juris, at page 1360, note 84 numerous Texas cases are collated in support of the text statement that—

" 'Where the bill, declaration, or complaint does not show such facts (transaction within the statute), compliance with the requirements of the statutes need not be alleged by complainant, but noncompliance is a matter of defense to be pleaded in bar or abatement.'

"This is sound logic, especially in view of our holding in this state that the defense of the statute is one that may be waived. The petition in the present case does allege a compliance with the statute, but it does not allege any fact which would make such compliance necessary. Under such circumstances, there being no plea of the statute by the defendants, there was no such issue in the case. The allegation of a compliance is surplusage."

842

■ The holding of the Court of Civil Appeals was reversed and the cause was remanded to the trial court for determination of other questions in the case. We think what was said in the above opinion is a complete answer to appellants' first assignment of error, and discloses that the trial court did not commit error in rendering judgment for the appellee absent proof by it of obtaining a permit to transact business in Texas. The assignment must be overruled.

■ The second assignment of error challenges the action of the trial court in sustaining a general demurrer to the answer and in rendering judgment for appellee. If the answer presented a valid defense to appellee's cause of action, the court erred in sustaining the demurrer, and for the purposes of the demurrer the allegations of fact in the answer must be conceded to be true. This rule does not apply, however, to deductions and conclusions by the pleader.

■ There are allegations in the answer which show that Mrs. Barton executed two series of interest coupon notes; one series was attached to the original principal note, they being in the sum of $137.-50 each, which constitute by calculation, interest at 5½ per cent. per annum on the principal; the second series of interest notes were for $37.50 each, or an additional 1½ per cent. per annum on the principal, making a total of interest contracted to be paid thereunder of 7 per cent. per annum. The decisions of this state are not altogether in harmony on the point, but we believe the weight of authority is to the effect that the purchaser of the principal obligation is chargeable with notice of the second set of interest notes and the junior lien to secure them as being a part of the whole transaction. This court recently followed this line of decisions in the case of Texas Farm Mortgage Co. et al. v. Elizabeth Rowley et al., 98 S.W. (2d) 854, in which we said: "The vice of usury inured in both principal and interest notes at the time the loan was consummated and the Travelers Insurance Company purchased the principal note with actual notice of the provisions of both notes and deeds of trust and subject to that defense. It could not acquire a higher right than the assignor possessed."

■ In the Rowley Case, supra, we also discussed a question similar in some respects to the one involved in this case—that is, a provision in the contract for the borrower to pay any taxes that may be levied against the note and lien—and we there held such item of taxes was properly added to the rate of interest contracted to be paid in determining the question of usury. But in that case there was no exception or saving clause, making the borrowers' liability for taxes dependent upon whether or not such payment, together with the rate of interest contracted for, would exceed ten per cent per annum on the loan.

In the amended answer under consideration, appellants pleaded, as an element of usurious interest, as shown by a paragraph of the answer in which quotations were taken from the deed of trust, that if taxes should be imposed against the note and lien within the State, while the property of a nonresident of the State, the borrower would pay all such taxes; but the answer further showed the deed of trust stipulated in this connection the following: " * * * provided that if the payment of the rate of interest provided for in said bond and the taxes and assessments referred to in this clause shall be construed by the court finally having jurisdiction thereof as requiring payment on the loan of money represented by said bond of interest in excess of ten per centum per annum, the holder of said bond shall pay such excess." By the quoted provision it is clear that the lender had no intention to increase the rate of interest charged so as to be in excess of the contractual rate allowed.

■ Then, too, by the calculations made in appellants' answer showing the several items going to make up the amount of interest the lender was authorized to demand and collect, there appears an amount of $250 per annum as interest at 10 per cent. after maturity of the principal, as well also the items of $137.50 and $37.50 with interest on each, which when added together show a greater sum of interest than 10 per cent. per annum; but in this calculation there is this vice: The two smaller items are amounts contracted to be paid as interest each year, which amounts to 7 per cent. per annum, and at the time the principal should mature this rate of interest ceases and the 10 per cent. rate begins; there can be no overlapping so that both rates can be demanded. The 7 per cent. rate has either already accrued when the principal matures or else it stops and the other rate begins.

To eliminate the 7 per cent. rate and the item of taxes, the latter being conditionally payable, we have the obligation drawing only 10 per cent. per annum under the terms of the contract; and this of course is only after maturity. There is no usury in charging 10 per cent. interest per annum on past due interest.

■ It is alleged in the amended answer that because the deed of trust provides for an accelerating maturity clause that failure to pay any installment of interest at maturity should at the option of the holder and owner of the principal note mature the whole indebtedness secured thereby, that all unmatured interest notes could likewise be thus matured. The decisions of this state are against this contention. They hold such expressions and provisions only mature any balance unpaid on principal and cover only matured interest. In case of Dugan v. Lewis, 79 Tex. 246, 14 S.W. 1024, 1026, 12 L.R.A. 93, 23 Am.St.Rep. 332, the Supreme Court had under consideration a similar provision of accelerating maturities as the one before us, and summing up its conclusions said:

"We do not think that a correct construction of the contract will make a greater amount of interest due and collectible upon it than shall have accrued on the principal, calculated up to date of collection at the rate named in the note, or, in other words, that any unaccrued interest comes within the proper meaning of the stipulation."

This identical contract, it seems, has been before the Court of Civil Appeals for the Dallas District for construction upon the points raised here, and we think that court correctly determined the questions involved. The case as reported is Burnette v. Realty Trust Co. (Tex.Civ.App.) 74 S.W.(2d) 536, 539, writ of error refused, in which the court said:

"In construing any clause in a contract, due observance must be given to the entire contract, whether it be contained in one instrument or in two or more; for only in this way can the controlling fact of the intention of the parties be ascertained. In the deed of trust securing the notes, evidencing the indebtedness created under the loan, it is declared, in effect, that in case of default in payment of the notes or any interest thereon, or in the performance of the covenants or agreements therein contained, then, at the option of the legal holder of the note, 'the whole indebtedness secured hereby shall at once become due, without notice, and may be collected by suit or proceedings hereunder.' Manifestly, the parties intended the same construction to be placed on this accelerating clause in the deed of trust as they intended to be placed on the accelerating clause in the notes. The term 'whole indebtedness,' used in the accelerating clause in a deed of trust, has been construed by the courts of this state to be the unpaid balance of the principal, and the matured interest up to the time of payment, and not to include any unearned interest at such time. Ætna Life Ins. Co. v. Foster (Tex.Civ.App.) 66 S.W.(2d) 428; Spiller v. Bell (Tex.Civ.App.) 55 S.W.(2d) 634; Dugan v. Lewis, 79 Tex. 246, 14 S. W. 1024, 12 L.R.A. 93, 23 Am.St.Rep. 332; Bankers' Life Co. v. Miller et al. (Tex.Civ.App.) 68 S.W.(2d) 574. These decisions, we think, announce the correct rule of law, and we adopt the same construction of the accelerating clause in the deeds of trust in this case as was adopted in the reported cases. Believing that the parties intended to express the same thought in the accelerating clause in the notes as was expressed in the respective deeds of trust, we construe the word 'interest' in such clause to mean 'matured interest' only, and thereby construe both loan contracts to be legal.

"Then again, the intention of the parties, in no instance, to authorize the collection of interest in excess of 10 per cent. per annum is clearly made manifest in the clause of each deed of trust providing that, if the note and lien be held by a nonresident and is taxed under the law of this state, as real estate, then such taxes shall be charged to the borrower and paid by him, 'provided, that if the payment of the rate of interest provided for in said bond (note) and the taxes and assessments referred to in this clause shall be construed by the court finally having jurisdiction thereof, as requiring payment on the loan of money, represented by said bond, of interest in excess of ten per cent per annum, the holder of said bond (shall) pay such excess.' To our minds, this clearly negatives any intention on the part of the parties to the two loans under inquiry to contract for usurious interest."

We think the trial court properly concluded that the amended answer did not present a defense of usury and committed no error in the matter complained of.

Complaint is made by the third assignment of error that the court erroneously entered judgment for appellee on the note which provided for an optional declaration of its maturity without proof of the fact it had exercised that option. In view of the institution of the suit and the declarations in the petition of the option, we think it was unnecessary that any particular notice to appellants of the exercise of the option be given, more especially when the note provided that the note should be declared due at the option of the holder, "without notice." See Tex. Jur. vol. 6, p. 687, § 80; Seaboard Bank & Trust Co. v. Amuny (Tex.Civ.App.) 6 S.W.(2d) 186, affirmed 23 S.W.(2d) 287 by Com.App.; Duenkel v. Amarillo Bank & Trust Co. (Tex.Civ.App.) 222 S.W. 670, writ of error refused; Stewart v. Thomas (Tex.Civ.App.) 179 S.W. 886, writ of error refused. The assignment is overruled.

The fourth assignment of error is not briefed by appellants nor in any way discussed, and is therefore waived, and there is nothing before us for consideration thereunder.

We find no error in the matters complained of, and the judgment of the trial court is affirmed.