## STALLINGS v. SLAUGHTER et al.
### No. 5373.

Court of Civil Appeals of Texas. Amarillo.
Dec. 8, 1941.

Rehearing Denied March 9, 1942.

Crenshaw, Dupree & Milam, of Lubbock, for appellant.

Kilgore & Rogers, of Wichita Falls, for appellees.

STOKES, Justice.

This suit, in the nature of trespass to try title, was filed by appellant, J. J. Stallings, against appellees, Sue Alice Slaughter and her husband, R. L. Slaughter, Jr., to recover the title and possession of Tract No. 34 of the Bob Slaughter Block in Hockley County, containing 160.9 acres of land. Appellees answered by disclaiming all of the right, title and interest in and to the land except 1/16th of the oil, gas and other minerals, thus reducing the controversy to that portion of the mineral rights. The trial was before the court without the intervention of a jury and resulted in a judgment denying appellant any relief and decreeing the 1/16th of the mineral rights in controversy to appellees. Appellant duly excepted to the judgment, gave notice of appeal, and presents the case in this court for review.

The record shows that on the 1st of January, 1933, the land was owned by Mrs. L. B. Todd, a widow, subject only to a deed of trust lien to secure the payment of an indebtedness of $2,000 held by the Union Central Life Insurance Company. In purchasing the land from Bob Slaughter Mrs. Todd had assumed the payment of this loan and on the 1st of January, 1933, she sold the 160.9 acres of land to C. B. Hamrick who assumed the $2,000 indebtedness held by the Union Central Life Insurance Company and executed ten notes in the sum of $202.35 each, payable to Mrs. Todd annually over a period of ten years. Mrs. Todd retained a vendor's lien on the land

to secure the payment of these second lien notes. In the deed to Hamrick Mrs. Todd also retained 1/16th of the oil, gas and other minerals in and under the land and afterwards, on December 20, 1938, in consideration of $10 cash and love and affection, she conveyed the 1/16th interest so retained to the appellee, Sue Alice Slaughter, who was her daughter. On the 29th of December, 1933, C. B. Hamrick and wife procured a new loan in the sum of $3,500 from the Federal Land Bank Commissioner who, in making the loan, acted in his official capacity and pursuant to the act of Congress known as the Emergency Farm Mortgage Act of 1933, 48 Stat. 41. The new loan was procured for the purpose of renewing and extending the unpaid balance of $2,339.77 then due and owing on the Union Central Life Insurance Company's note and lien and also $1,160.23, being the principal and interest then owing on the vendor's lien notes held by Mrs. Todd. On the 19th of January, 1934, the Union Central Life Insurance Company assigned to the Land Bank Commissioner the $2,000 note and the deed of trust lien held by it and on the 8th of January, 1934, Mrs. Todd assigned to the Land Bank Commissioner the balance owing on her vendor's lien notes together with the vendor's lien retained by her to secure the same. Hamrick defaulted in the payment of some of the installments falling due on the indebtedness held by the Land Bank Commissioner and on the 18th of June, 1936, R. S. Rodgers, agent and attorney in fact for A. C. Williams, the trustee in the deed of trust, after duly advertising the land for sale as provided in the deed of trust, sold the same at public vendue to the Federal Farm Mortgage Corporation for the sum of $2,100 and conveyed it to the purchaser by a trustee's deed. On December 3, 1936, the Federal Farm Mortgage Corporation sold and conveyed the land to appellant, J. J. Stallings, for a consideration of $644 cash and one note in the sum of $2,574, the principal and interest payable in twenty equal annual installments of $206.54 'each.

 Appellant contends that the 1/16th of the oil and mineral rights retained by Mrs. Todd in her deed to Hamrick was included in the foreclosure proceedings instituted by the Land Bank Commissioner and the same was, therefore, included in the deed of the Federal Farm Mortgage Corporation conveying the land to him. Appellees contest this contention. The trial court held in effect that the description of the interest conveyed in trust by Hamrick to A. C. Williams, trustee for the Land Bank Commissioner, and the description in the deed executed by Rodgers, attorney in fact for the trustee, and the description in the deed executed by the Farm Mortgage Corporation to appellant Stallings did not convey, nor purport to convey, the 1/16th of the oil, gas and mineral estate held by Mrs. Todd and afterwards conveyed to Mrs. Slaughter. This holding constitutes the basis of the principal contention made by appellant and raises what we consider to be the controlling question in the case.

It is obvious that, if the Union Central Life Insurance Company assigned to the Land Bank Commissioner the entire lien upon, and interest in, the land which it held under the deed of trust that had been executed by the predecessor in title of Mrs. Todd, the foreclosure proceedings of the Land Bank Commissioner under his deed of trust included and passed title to the 1/16th of the minerals owned by Mrs. Todd, because whatever interest and title Mrs. Todd owned in the land was acquired subsequently to the Union Central Life Insurance Company's deed of trust and was, therefore, subject thereto. The loan extended to Hamrick by the Land Bank Commissioner was for the purpose of taking up, renewing and extending the Union Central Life Insurance Company's debt and lien and when the foreclosure proceedings were completed the sale and conveyance thereunder necessarily carried with them everything then owned and held by the Land Bank Commissioner. It, therefore, becomes vital to ascertain the extent of the holdings of the Land Bank Commissioner in relation to the prior deed of trust. The loan of Union Central Life Insurance Company was made to J. B. Dismukes who owned the land prior to the time it was conveyed to Mrs. Todd and was of date August 16, 1928. The land conveyed to the trustee in that loan was described as "Tract No. 34, Bob Slaughter Block, Abst. No. 172, Patent No. 287, Vol. 24, containing 160.9 acres of land and described by metes and bounds as follows:"

Then follows correct field notes of the tract, after which the following clause appears as the only qualification: "Less

564

and excepting, however, a strip of land twenty feet wide on the north and east sides of this land, reserved for a public road."

This description undoubtedly included every vestige of the title and all interest in the land save only the twenty feet constituting the public road on the north and east sides. The Union Central Life Insurance Company, therefore, acquired a lien on the surface and all of the minerals of any kind or character that the land might contain. After Dismukes executed this deed of trust, Mrs. Todd, by mesne conveyances, became the owner of the land subject only to the Union Central Life Insurance Company's deed of trust lien. She then sold and conveyed the land to C. B. Hamrick and retained 1/16th of the oil, gas and mineral rights which she afterwards conveyed to appellee, Mrs. Slaughter. After Hamrick acquired the land from Mrs. Todd and while the latter still owned the mineral interest retained by her, Hamrick procured the loan from the Land Bank Commissioner and the Union Central Life Insurance Company thereupon assigned to the Commissioner the interest in its deed of trust and the land which constituted a portion of the indebtedness involved in the foreclosure proceedings. The assignment of the Union Central Life Insurance Company transferred to the Land Bank Commissioner the $2,000 note executed by Dismukes. In further description of the note and specifying the lien upon, or interest in, the land conveyed, the assignment contains the following provision: "Secured by and more fully described in a certain deed of trust of even date therewith, executed by J. B. Dismukes, a single man, to Jessie A. Clarke, Jr., trustee, and now shown of record in Vol. 11, page 51, Deed of Trust Records of Hockley County, Texas, to which instrument and its record reference is here made for a better description of said note or notes and the land securing the payment thereof. And the grantor hereby bargains, sells and conveys unto the said Land Bank Commissioner all of the right, title and interest now owned or held by grantor in and to said land by virtue of said note or notes and the lien securing same, insofar only as said lien rests upon and against the lands described in deed of trust dated December 4, 1933, executed by C. B. Hamrick and wife, Flora Hamrick, to A. C. Williams, trustee, for the use and benefit of said commissioner".

From the above quotation it will be observed that the Union Central Life Insurance Company, in its assignment to the Land Bank Commissioner, did not describe the land as it was described in the deed of trust held by it, nor did it purport to convey the identical interest evidenced by its own deed of trust. Instead, it granted, sold and conveyed to the Commissioner all of the right, title and interest owned or held by it in so far only as its lien rested upon and against the lands described in the Land Bank Commissioner's deed of trust. The description in the latter deed of trust is practically identical with that contained in the Union Central Life Insurance Company's deed of trust with the single exception that the Land Bank Commissioner's deed of trust contains the following clause, viz.: " * * * and being the same land conveyed to C. B. Hamrick by Mrs. L. B. Todd, widow, by deed dated the 1st day of January, 1933, and shown of record in Vol. 35, page 540, Deed Records of Hockley County, Texas, and filed on the 7th day of November, 1933".

As we have said, the deed of Mrs. Todd referred to in the foregoing quotation retained the 1/16th of the oil and mineral rights here involved. From this we think it is evident that the Union Central Life Insurance Company did not convey and did not intend to convey or assign to the Land Bank Commissioner the mineral interests thus retained by Mrs. Todd and afterwards conveyed to Mrs. Slaughter. Moreover, it is evident, we think, that it was not the purpose nor the intention of the Land Bank Commissioner to procure this interest. Certainly the unusual method adopted by the execution and acceptance of the assignment was founded upon some special purpose. Ordinarily, where the assignment itself does not contain a complete description of the land covered by the assigned lien, but refers to some other instrument therefor, such reference is to the deed of trust held by the assignor. Since the only difference between the descriptions of the land in the two deeds of trust is that the Land Bank Commissioner's deed of trust confines the interest in the land to that which was conveyed by Mrs. Todd's deed to Hamrick, whereas the Union Central Life Insurance Company's deed of trust was without any limitation whatever, we must conclude that the purpose, intention and effect of the assignment from the Life Insurance Company to the Land Bank Commissioner was to exclude the

1/16th interest in the minerals that had theretofore been retained and was then held by Mrs. Todd.

Appellant contends that the clause in the description which purports to restrict the interest assigned by the Union Central Life Insurance Company, and the interest foreclosed under the deed of trust of the Land Bank Commissioner, and inserted also in the deeds to and from the Federal Farm Mortgage Corporation, and limit the same to the land conveyed by Mrs. Todd to Hamrick, is a mere reference to the latter deed and in aid of the description that had already been inserted in those instruments and did not have the effect of restricting, or taking anything from, the granting clauses in those deeds. As supporting his contention, appellant cites us to the case of Duhig v. Peavy-Moore Lbr. Co., 135 Tex. 503, 144 S.W.2d 878. In that case the Supreme Court held that the statement in the deed there involved to the effect that the land described was the same tract as that formerly owned by Talbot-Duhig Lumber Company and conveyed to Duhig by Talbot was not intended to define or qualify the estate or interest conveyed but that it was inserted as a means of further identifying the tract or area described by metes and bounds. As applied to the entire deed involved in that case, the holding was undoubtedly correct, but we do not consider that case as controlling here for the reason that the instruments involved in that case and those involved here reflect within themselves entirely different purposes and intentions. The significant feature here is not so much the Land Bank Commissioner's deed of trust and the subsequent deeds, but, rather, it is the assignment of the Union Central Life Insurance Company. As we have already said, the question of whether or not appellant procured the oil and mineral interest retained by Mrs. Todd is controlled entirely by the effect of the assignment from the Life Insurance Company to the Land Bank Commissioner. The rule is well established that the courts will construe deeds and other contracts so as to give effect to the intention of the parties where that can be done. Pierson v. Sanger Bros., 93 Tex. 160, 53 S.W. 1012; Holloway's Unknown Heirs v. Whatley, Tex.Civ.App., 104 S.W.2d 646, affirmed 133 Tex. 608, 131 S.W.2d 89, 123 A.L.R. 843. By choosing the deed of trust executed by Hamrick to A. C. Williams, trustee for the Land Bank Commissioner, instead of its own deed of trust, as the criterion by which to identify the interest which it was conveying, we think it is conclusive that it was the purpose and intention of the Life Insurance Company in executing the assignment, as well as that of the Land Bank Commissioner in accepting the same, to assign and convey only such interest as the Land Bank Commissioner acquired under the deed of trust from Hamrick. Hamrick never acquired the 1/16th interest and he could not, of course, convey what he did not own. Richardson v. Levi, 67 Tex. 359, 3 S.W. 444; Duhig v. Peavy-Moore Lbr. Co., supra. The Land Bank Commissioner, therefore, did not procure a lien from Hamrick on the 1/16th interest in the mineral rights here involved and a reference to the Hamrick deed of trust reveals plainly that it was not Hamrick's intention to include, mortgage or convey a greater interest than he had acquired from Mrs. Todd. H. O. L. C. v. Cilley, Tex.Civ.App., 125 S.W.2d 313. As indicated by what we have said, we do not agree with appellant in this contention and his assignments of error in respect thereto will be overruled.

Appellant next complains of the action of the trial court in admitting evidence of prior and contemporaneous statements made by the employees of the Federal Land Bank who negotiated the Hamrick loan for the Land Bank Commissioner. He contends that the introduction of such statements constituted an attempt to vary and contradict the terms of the deed of trust executed by Hamrick to the Land Bank Commissioner and the deed from the Federal Farm Mortgage Corporation to appellant. These statements were substantially that the appraiser who inspected the land on behalf of the Land Bank Commissioner stated in his report that Hamrick did not own the entire mineral interest and that the Land Bank Commissioner approved Hamrick's application subject to the conditions written in the report, one of which was that Hamrick must own not less than one-fourth of the mineral rights or at least 1/32d royalty under all the land accepted as security for the Commissioner's loan; that in the opinion rendered to the Land Bank Commissioner by the attorney who examined the title, the land was described as being the same land conveyed to Hamrick by Mrs. Todd; a letter written by R. S. Rodgers, the attorney in fact, to the Federal Land Bank, and a letter written

by appellant to appellee, R. L. Slaughter, Jr., in which appellant stated that Mrs. Todd owned half of the minerals. We find no error in the admission of this testimony but even if it was error, it was harmless because it could not have changed the effect of the assignment from the Life Insurance Company. However, in our opinion it did not have the effect, nor was it designed, to contradict or vary the terms of the deed of trust executed by Hamrick, but was rather in the nature of corroborative evidence of the deed of trust and evidence of intention to make the loan upon that portion of the land only that had been acquired by Hamrick from Mrs. Todd.' It showed that the Land Bank Commissioner knew he was not procuring a lien upon the entire mineral interest and that he was willing to make the loan provided Hamrick owned as much as one-fourth of the mineral rights or 1/32d royalty interest. The letter of R. S. Rodgers to the Federal Land Bank, which was written long before the loan was closed, specifically stated that some part of the mineral rights was outstanding and, in the letter written by appellant to ·R. L. Slaughter, Jr., dated December 12, 1938, long after the loan was made and after appellant had purchased the land, he stated to Slaughter that Mrs. Todd owned half of the minerals. We find nothing in these statements which tend in any respect to contradict the ·terms of the deed of trust. They show plainly that the Land Bank Commissioner fully understood he was not acquiring a lien on the entire mineral estate; that it was not his intention to do so and that appellant himself recognized, long after he purchased the land, that he had not acquired the entire mineral interests and estate therein. He made no complaint about it at that time and the letter contains no suggestion that he had not procured all of the interest in the land he had contracted for when he purchased it. In fact, he sought the joinder of appellees in effecting an oil and gas lease upon it.

Finally, appellant contends that the Federal Land Bank Commissioner, being an agency or instrumentality of the Government, could not waive his lien or any portion of it and that the court erred in holding he had waived his lien insofar as it covered the 1/16th mineral interest here involved. We do not find it necessary to pass upon the question of whether or not the Land Bank Commissioner had authority to waive a portion of the lien because, as we have shown, he never acquired a lien upon the mineral interest involved in this case and it, therefore, becomes immaterial whether the manner in which the lien was created and accepted be called a waiver or designated by some other term. Under the record before us, the only manner in which appellant could be said to have acquired the mineral interests here involved was through the foreclosure proceedings and, since the deed of trust which was foreclosed did not include the mineral estate retained by Mrs. Todd, that portion of it was not, and could not have been, conveyed to him by the deeds executed after the foreclosure.

We have carefully examined all of the assignments of error, propositions of law and contentions made by appellant and, in our opinion, no reversible error is shown by any of them.' The judgment of the court below· will, therefore, be affirmed.