**FLEMING et al. v. MILLER et al.**

**No. 2746.**

Court of Civil Appeals of Texas. Eastland.

March 17, 1950.

Rehearing Denied April 7, 1950.

356

Mark Callaway, Comanche, C. H. Milliken, Fort Worth, for appellants.

Fred O. Jaye, De Leon, Turner & Seaberry, Eastland, for appellees.

LONG, Justice.

This is a suit in trespass to try title involving the minerals in approximately 400 acres of land in the Wm. Shipp League, Comanche County, Texas. The plaintiffs are the heirs of J. Doss Miller, Sr. The defendants are the heirs at law of J. R. Fleming, Alex Booth and Daniel Wise, except the defendant Kelsey, who is an assignee of certain mineral interests from the Fleming and Wise heirs. Upon a trial before the court without a jury, plaintiffs recovered all of the minerals in and under said land. Defendants have appealed.

There is very little dispute as to the facts, the evidence being largely documentary. James C. Walker is the common source of title. On October 21, 1887, Walker conveyed the east one-third of the Wm. Shipp Survey (and other lands) to J. R. Fleming, retaining a vendor's lien to secure three notes due one, two and three years from date. There is no deed in the record from Fleming to Alex Booth but the trial court found that Fleming did convey to Alex Booth an undivided one-half interest in the land, retaining a vendor's lien on such one-half interest to secure six notes aggregating $9,500.00. This finding has support in the evidence.

On February 8, 1890, Fleming and Booth executed a general warranty deed conveying the property to Daniel Wise for a recited consideration of $14,870.00 paid and the assumption by Wise of all liens against the land and in which deed Fleming and Booth reserved one-half of the minerals in and under said land.

On March 18, 1890, Daniel Wise conveyed the same land to Henry W. Dayton, for a recited consideration of $15,000.00 paid, and assumption by Dayton of all indebtedness against said land in which deed Wise attempted to reserve one-half of the minerals under the land. Thereafter, on December 7, 1891, Dayton executed to Abraham C. Bernheim of New York, trustee, a deed of trust covering the land involved to secure three notes owned by H. B. Cloflin & Company, executed by Fleming, payable to Walker and secured by vendor's lien on the land and six notes owned by Hecht Bros. executed by Booth payable to Fleming and secured by vendor's lien on the land. On May 8, 1901, J. A. Holman, substitute trustee under the aforesaid deed of trust, executed a trustee's deed to Joseph M. Herman conveying the entire east one-third of the Wm. Shipp Survey, of which the land in controversy is a part.

Thereafter, on February 11, 1904, and on February 2, 1905, respectively, Joseph M.

Herman, as trustee, executed two deeds to J. Doss Miller covering the two tracts of land involved in this suit.

The trial court found that the deed from Wise to Dayton contained a general warranty clause but that the County Clerk in recording the instrument, erroneously failed to record a portion of the warranty clause, which was a clerical error on his part and which mistake was first discovered during the trial of this case. Defendants contend that the evidence is insufficient to sustain such finding. The original deed from Wise to Dayton was not introduced in evidence and it was established that it could not be found. We have before us a photostatic copy of the deed as it appears of record in Comanche County. This deed shows upon its face that the Deputy County Clerk who recorded it in longhand made several errors in such recording. A portion of a general warranty provision was recorded by the Clerk and we believe the trial court was justified in concluding that part of the warranty clause was omitted. The deed shows on its face immediately after the place where the general warranty would usually be found, the following statement, "But it is expressly understood and agreed that this warranty does not extend to nor include any lien on said land now in existence and that said grantee herein, Henry W. Dayton, agrees to assume and pay off any and all liens on the several tracts of land aforesaid." We believe the evidence sustains the trial court in concluding that the expression, "this warranty," evidently referred back to the general warranty which was in the original deed but a portion of which was left unrecorded by the clerk. If the deed contained a general warranty, then the attempted reservation by Wise of one-half the minerals is ineffective. We believe that the law as announced by our Supreme Court in the case of Duhig v. Peavy-Moore Lumber Co., Inc., 135 Tex. 503, 144 S.W.2d 878, is decisive of this point. The deed from Wise to Dayton contained the following statement, "And it is expressly agreed and understood that the said Daniel Wise, grantor herein, retains and reserves one-half of all the rights to any minerals or coal lying beneath the surface of any of said tracts of land and also all rights necessary to mine, work and develop the same and to prepare the same for market." Fleming and Booth reserved one-half of the minerals in their deed to Wise. Therefore, when Wise conveyed the land to Dayton he did not own but one-half the minerals thereunder. The deed from Wise to Dayton purported to convey all the interest in the land except the one-half interest in the minerals reserved by Wise. He only owned one-half of the minerals. If we should construe the deed to mean that Wise retained unto himself one-half of the minerals, then Dayton only acquired the surface of the land. By the granting clause of the deed, Wise conveyed a fee-simple title to all of the land, therefore, when we give effect to the law as announced by our Supreme Court in Duhig v. Peavy-Moore Lumber Co., Inc., supra, we hold that Dayton acquired the land and one-half the minerals. The trial court did not err in vesting the title to one-half the minerals in plaintiffs.

We come next to consider the other one-half of the minerals, that is, the one-half of the minerals reserved by Fleming and Booth in their deed to Wise. Immediately before this deed was made, Fleming and Booth owned the fee-simple title to the land including all the minerals, subject to the outstanding vendor's lien held by Walker. After the deed to Wise, Fleming and Booth owned one-half of the minerals in the land subject to such vendor's lien and also the interest owned by Booth was subject to a vendor's lien held by Fleming against the land. As has been heretofore stated, it is our conclusion that when Wise conveyed the land to Dayton that Dayton was thereby vested with a fee-simple title to the land and one-half the minerals; that Wise did not retain any interest in the minerals. The plaintiffs hold under a deed executed by the trustee under the deed of trust executed by Dayton to secure the indebtedness covered by the vendor's lien in favor of Fleming and Walker. At the time Dayton executed the deed of trust to fur-

358

ther secure the indebtedness, he owned the surface and one-half the minerals. The title to one-half the minerals was never vested in him. Dayton could not convey the minerals not owned by him. At the time Dayton executed the deed of trust, the owners of the notes payable to Walker and Fleming, in the event of default of payment, had the right to foreclose their lien and reduce their debt to judgment by filing suit in a court of proper jurisdiction. But they had no right to advertise the land for sale and sell the same through a trustee as provided for in the deed of trust executed by Dayton. Fleming and Booth were not parties to the deed of trust. Dayton had no power to bind them or the mineral interest owned by them in such deed of trust. He had no power to set up a procedure whereby the mineral interest owned by Fleming and Booth might be sold as provided for in such instrument. Spiller et al. v. Bell et al., Tex.Civ.App., 55 S.W.2d 634; Stallings v. Slaughter et al., Tex.Civ.App., 159 S.W.2d 562.

We, therefore, conclude that (1) the title to one-half of the minerals under the land is vested in the heirs of J. Doss Miller; (2) that the title to the other one-half of the minerals is vested in the heirs of J. R. Fleming and Alex Booth, and (3) that the heirs of Daniel Wise have no interest in the minerals.

The judgment of the trial court is reversed and the cause is remanded for proceedings not inconsistent with this opinion.

On Motion for Rehearing

Appellees, in their motion for rehearing, contend that Claflin & Company and Hecht Bros., the beneficiaries under the deed of trust executed by Dayton, were the owners of the superior legal title to the land involved and that such title passed to them under the deeds executed by Joseph M. Herman, Trustee, to J. Doss Miller, Sr. The trial court found that the superior legal title was transferred to Claflin & Company and Hecht Bros. & Company by conveyance in writing which, though not shown of record, was proved by all of the facts and circumstances in this case. We

are of the opinion that the evidence is insufficient to sustain this finding. There is no deed or other conveyance of such superior legal title in the record. There is evidence that search was made for such deed among the papers of J. Doss Miller, deceased, and that it could not be found. There is no evidence that such deed was ever executed. Appellees rely upon long continued possession and use of the land to support this finding. It is true that appellees have had possession of the surface of the land for many years. However, the minerals under the land were severed from the surface by the deeds from Fleming to Booth and from Fleming and Booth to Wise. There is no evidence that would put appellants upon notice that appellees were claiming the minerals under the land. Appellees did not drill or cause to be drilled any wells for oil or gas or explore the land in any way for minerals. The appellees never gave any oil and gas leases upon the land. The appellants gave several oil and gas leases thereon. There is no evidence that appellants acquiesced in appellees' claim to the minerals. Furthermore, it is just as reasonable to presume that the vendor's lien notes were transferred to Claflin & Company and Hecht Bros. as to presume that a deed to the superior title was given. At the time the land was sold by the trustee for Claflin & Company and Hecht Bros. they did not purport to own the superior legal title but sold same under the powers given in the deed of trust executed by Dayton. The power of attorney executed by Claflin & Company and Hecht Bros. to Herman "requested and required him to proceed to Texas in person or by agent or attorney to sell the lands either at public or private sale for partition and division as provided in the terms of the deed of trust executed by Dayton." Herman was not instructed to "proceed to Texas" and sell the superior legal title held by Claflin & Company and Hecht Bros. in the land, but was instructed to sell the land under the terms of the deed of trust executed by Dayton. Furthermore, Herman did not purport to convey any interest in the land except that which he was empowered by Dayton's deed of trust to convey, to-wit:

the surface and a one-half interest in the minerals.

We cannot sustain this judgment under the theory that Claflin & Company and Hecht Bros. were the owners of the su-·perior legal title. We have again examined the record and believe that we cor-·rectly disposed of this case in our original opinion, and accordingly the motions for rehearing filed by both appellants and appellees are overruled.